"*Securities Act*" means the Securities Act of 1933, as amended, and the rules and regulations of the Commission promulgated thereunder.

"*Shelf Registration*" shall have the meaning set forth in the Registration Rights Agreement.

"*Significant Subsidiary*" shall have the meaning set forth in Regulation S-X under the Securities Act, as in effect on the Issue Date.

"*Special Record Date*" means, for payment of any Defaulted Interest, a date fixed by the Paying Agent pursuant to Section 2.12 hereof.

"*S&P*" means Standard & Poor's Ratings Services, a division of The McGraw-Hill Companies, and its successors.

"*Stated Maturity*," when used with respect to any Note, means April 1, 2012.

"*Subordinated Indebtedness*" means any Indebtedness of the Issuers or a Guarantor that is contractually subordinated to the Notes or such Guarantee, as applicable, in any respect.

"*subsidiary*," with respect to any Person, means (1) a corporation a majority of whose Equity Interests with voting power, under ordinary circumstances, to elect directors is at the time, directly or indirectly, owned by such Person, by such Person and one or more Subsidiaries of such Person or by one or more Subsidiaries of such Person, and (2) any other Person (other than a corporation) in which such Person, one or more Subsidiaries of such Person, or such Person and one or more Subsidiaries of such Person, directly or indirectly, at the date of determination thereof has a majority ownership interest, or (3) a partnership in which such Person or a Subsidiary of such Person is, at the time, a general partner and in which such Person, directly or indirectly, at the date of determination thereof has a majority ownership interest. Unless the context requires otherwise, "subsidiary," with respect to any Person, means each direct and indirect subsidiary of such Person.

"*Subsidiary*" means any subsidiary of any of the Issuers that is not an Unrestricted Subsidiary.

"*Tax Loss Benefit Amount*" means with respect to any taxable year or portion thereof, the amount by which the Permitted Tax Distributions would be reduced were a net operating loss or net capital loss from a prior taxable year of an Issuer ending subsequent to the Issue Date carried forward to the applicable taxable year or portion thereof; provided, that for such purpose the amount of any such net operating loss or net capital loss shall be used only once and in each case the unused portion of such loss shall be carried forward to the next succeeding taxable year until so used. For purposes of calculating the Tax Loss Benefit Amount, the proportionate part of the items of taxable income, gain, deduction, or loss (including capital gain or loss) of any Subsidiary that is a Flow Through Entity for a taxable year or portion thereof of such Subsidiary ending subsequent to the Issue Date shall be included in determining the amount of net operating loss or net capital loss of such Issuer.

36

10/15/2007 11:13 AM

"*TIA*" means the Trust Indenture Act of 1939 (15 U.S.C. §§ 77aaa-77bbbb) as in effect on the date on which this Indenture is qualified under the TIA, except as provided in Section 9.8 hereof.

"*Transfer Restricted Notes*" means Global Notes and Definitive Notes that bear or are required to bear the Private Placement Legend, issued under this Indenture.

"*Trustee*" means the party named as such above, until a successor replaces it in accordance with the applicable provisions of this Indenture and thereafter means such successor serving hereunder.

"*Unrestricted Definitive Note*" means one or more Definitive Notes that do not bear and are not required to bear the Private Placement Legend, issued under this Indenture.

"*Unrestricted Global Note*" means one or more permanent Global Notes representing a series of Notes that does not bear and is not required to bear the Private Placement Legend, issued under this Indenture.

"*UCC*" means the Uniform Commercial Code (or any successor provision or provisions) of any relevant jurisdiction.

"*Unrestricted Subsidiary*" means:

(1)        any subsidiary of the Issuers that, at or prior to the time of determination, shall have been designated by the applicable Issuer's Board of Directors as an Unrestricted Subsidiary; *provided*, that such subsidiary at the time of such designation (a) has no Recourse Indebtedness; (b) is not party to any agreement, contract, arrangement or understanding with the Issuers or any Subsidiary unless the terms of any such agreement, contract, arrangement or understanding are no less favorable to the Issuers or such Subsidiary than those that might be obtained at the time from Persons who are not Affiliates of the Issuers; (c) is a Person with respect to which neither the Issuer nor any of the Subsidiaries has any direct or indirect obligation (x) to subscribe for additional Equity Interests or (y) to maintain or preserve such Person's financial condition or to cause such Person to achieve any specified levels of operating results; and (d) does not directly, indirectly or beneficially own any Equity Interests of, or Subordinated Indebtedness of, or own or hold any Lien on any property of, the Issuer or any other Subsidiary, and

(2)        any subsidiary of an Unrestricted Subsidiary.

Any Issuer's Board of Directors may designate any Unrestricted Subsidiary to be a Subsidiary, *provided*, that (1) no Default or Event of Default is existing or will occur as a consequence thereof and (2) immediately after giving effect to such designation, on a *pro forma*
basis, the Issuer could incur at least $1.00 of Indebtedness pursuant to the Debt Incurrence Ratio Test. Each such designation shall be evidenced by filing with the Trustee a certified copy of the resolution giving effect to such designation and an

37

Officers' Certificate certifying that such designation complied with the foregoing conditions.

"*U.S. Government Obligations*" means direct non-callable obligations of, or noncallable obligations guaranteed by, the United States of America for the payment of which obligation or guarantee the full faith and credit of the United States of America is pledged.

"*U.S. Person*" means a U.S. person as defined in Rule 902(o) under the Securities Act.

"*Voting Equity Interests*" means Equity Interests which at the time are entitled to vote in the election of, as applicable, directors, members or partners generally

"*Wholly Owned Subsidiary*" means a Subsidiary all the Equity Interests of which (other than directors' qualifying shares) are owned by the Issuers or one or more Wholly Owned Subsidiaries or a combination thereof.

"*Working Capital Payment*" means the cash payment of the excess, if any, of the Positive Working Capital over the Working Capital as of the Third Closing Date, as the foregoing capitalized terms are defined in the Joint Venture Agreement, pursuant to Section 2.8 of the Joint Venture Agreement.

**Section 1.2    Other Definitions**

| Term | Defined in Section |
|---|---|
| "Acceleration Notice" | 6.1 |
| "Affiliate Transaction" | 4.12 |
| "Asset Sale" | 4.13 |
| "Asset Sale Amount" | 4.13 |
| "Asset Sale Notice" | 4.13 |
| "Asset Sale Offer" | 4.13 |
| "Asset Sale Offer Amount" | 4.13 |
| "Asset Sale Offer Price" | 4.13 |
| "Asset Sale Purchase Date" | 4.13 |
| "Authentication Order" | 2.2 |
| "Benefited Party" | 11.1 |
| "C Corporation" | *Definition of Permitted C-Corp Conversion* |
| "Change of Control" | 4.14 |
| "Change of Control Notice" | 4.14 |
| "Change of Control Offer" | 4.14 |
| "Change of Control Purchase Date" | 4.14 |
| "Change of Control Purchase Price" | 4.14 |
| "Company" | *Preamble* |
| "Covenant Defeasance" | 8.3 |
| "Defaulted Interest" | 2.12 |

38

| Term | Defined in Section |
|------|-------------------|
| "Disqualified Holder" | 3.9 |
| "DTC" | 2.3 |
| "Event of Default" | 6.1 |
| "Excess Proceeds" | 4.13 |
| "Federal Flow Through Entity" | *Definition of Flow Through Entity* |
| "Finance Corp." | *Preamble* |
| "First Reference Period" | *Definition of Reference Period* |
| "Guarantee Obligations" | 11.1 |
| "incur" or "incurrence" | 4.7 |
| "Incurrence Date" | 4.7 |
| "Investment Company Act" | 4.16 |
| "Issuers" | *Preamble* |
| "Legal Defeasance" | 8.2 |
| "Liquidated Damages Notice" | 4.22 |
| "Management/Royalty Payments" | 4.7(b)(6) |
| "Notes" | *Preamble* |
| "Paying Agent" | 2.3 |
| "Refinancing" | *Definition of Permitted Refinancing Indebtedness* |
| "Registrar" | 2.3 |
| "Regulatory Redemption" | 3.9 |
| "Redemption Date" | 3.7 |
| "Related Business Assets" | 4.13 |
| "Second Reference Period" | *Definition of Reference Period* |
| "Series A Notes" | *Preamble* |
| "Series B Notes" | *Preamble* |
| "Tax Calculation Event" | *Definition of Permitted Tax Distributions* |
| "Tax Distribution Shortfall" | *Definition of Permitted Tax Distributions* |
| "Tax Distribution Overage" | *Definition of Permitted Tax Distributions* |
| "Third Reference Period" | *Definition of Reference Period* |
| "Transaction Date" | *Definition of Consolidated Coverage Ratio* |

### Section 1.3    Incorporation by Reference of Trust Indenture Act

Whenever this Indenture refers to a provision of the TIA, such provision is incorporated by reference in and made a part of this Indenture.

The following TIA terms used in this Indenture have the following meanings:

"*Commission*" means the Securities and Exchange Commission;

39

http://www.sec.gov/Archives/edgar/data/1326686/000104746905014761...

"*obligor*" on the Notes means the Issuers, each Guarantor and any successor obligor upon the Notes.

All other terms used in this Indenture that are defined by the TIA, defined by TIA reference to another statute or defined by Commission rule under the TIA have the meanings so assigned to them.

**Section 1.4**    <u>**Rules of Construction**</u>

Unless the context otherwise requires:

(1)    a term has the meaning assigned to it;

(2)    an accounting term not otherwise defined has the meaning assigned to it in accordance with GAAP;

(3)    "or" is not exclusive;

(4)    words in the singular include the plural, and in the plural include the singular;

(5)    provisions apply to successive events and transactions;

(6)

"*herein*," "*hereof*" and other words of similar import refer to this Indenture as a whole and not to any particular Article, Section or other subdivision;

(7)

references to sections of or rules under the Securities Act and the Exchange Act shall be deemed to include substitute, replacement of successor sections or rules adopted by the Commission from time to time; and

(8)    references to the "*Intercreditor Agreement*" shall mean if the Intercreditor Agreement is then in effect.

**ARTICLE II**
**THE NOTES**

**Section 2.1**    <u>**Form and Dating**</u>

(a)    *General*.  The Notes and the Trustee's certificate of authentication shall be substantially in the form of Exhibit A hereto; *provided*, that the form of the Exchange Notes shall include such variations as are permitted or required by the Registration Rights Agreement.

The Notes may have notations, legends or endorsements required by law, stock exchange rule, depository rule or usage.  Each Note shall be dated the date of its issuance and shall show the date of its authentication.  The Notes shall be in denominations of $1,000 and integral multiples thereof.

40

The terms and provisions contained in the Notes shall constitute, and are hereby expressly made, a part of this Indenture and the Issuers, the Guarantors and the Trustee, by their execution and delivery of this Indenture, expressly agree to such terms and provisions and to be bound thereby.  However, to the extent any provision of any Note conflicts with the express provisions of this Indenture, the provisions of this Indenture shall govern and be controlling.

(b)     *Global Notes*.  Notes issued in global form shall be substantially in the form of Exhibit A attached hereto (including the Global Note Legend thereon and the "Schedule of Exchanges of Interests in the Global Note" attached thereto).  Notes issued in definitive form shall be substantially in the form of Exhibit A attached hereto (but without the Global Note Legend thereon and without the "Schedule of Exchanges of Interests in the Global Note" attached thereto).  Each Global Note shall represent such of the outstanding Notes as shall be specified therein and each shall provide that it shall represent the aggregate principal amount of outstanding Notes from time to time endorsed thereon and that the aggregate principal amount of outstanding Notes represented thereby may from time to time be reduced or increased, as appropriate, to reflect exchanges and redemptions.  Any endorsement of a Global Note to reflect the amount of any increase or decrease in the aggregate principal amount of outstanding Notes represented thereby shall be made by the Trustee or the Notes Custodian, at the direction of the Trustee, in accordance with instructions given by the Holder thereof as required by Section 2.6 hereof.

(c)     *Euroclear and Clearstream Procedures Applicable*.  The provisions of the "Operating Procedures of the Euroclear System" and "Terms and Conditions Governing Use of Euroclear" and the "General Terms and Conditions of Clearstream Banking Luxembourg" and "Customer Handbook" of Clearstream Banking Luxembourg in effect at the relevant time shall be applicable to transfers of beneficial interests in the Regulation S Global Notes that are held by Participants through Euroclear or Clearstream Banking Luxembourg.

## Section 2.2     Execution and Authentication

Two Officers shall sign the Notes for each Issuer by manual or facsimile signature.  In the case of Definitive Notes, such signatures may be imprinted or otherwise reproduced on such Notes.  If an Officer whose signature is on a Note no longer holds that office at the time a Note is authenticated, the Note shall nevertheless be valid.  A Note shall not be valid until authenticated by the manual signature of the Trustee.  The signature shall be conclusive evidence that the Note has been authenticated under this Indenture.  The Trustee shall, upon a written order of each Issuer signed by an Officer (an "*Authentication Order*"), authenticate Notes for issuance up to the aggregate principal amount stated in such Authentication Order; *provided* that Notes authenticated for issuance on the Issue Date shall not exceed $130,000,000 in aggregate principal amount.  The Trustee may appoint an authenticating agent acceptable to the Issuers to authenticate Notes.  An authenticating agent may authenticate Notes whenever the Trustee may do so.  Each reference in this Indenture to authentication by the Trustee includes authentication

41

by such agent. An authenticating agent has the same rights as an Agent to deal with Holders or an Affiliate of the Issuers.

**Section 2.3        Registrar, Paying Agent and Depositary**

The Issuers shall maintain an office or agency in the Borough of Manhattan, The City of New York, which shall initially be The Bank of New York Trust Company, N.A., c/o The Bank of New York, where (i) Notes may be presented for registration of transfer or for exchange ("*Registrar*") and (ii) Notes may be presented for payment ("*Paying Agent*"). The Registrar shall keep a register of the Notes and of their transfer and exchange. The Issuers may appoint one or more co-registrars and one or more additional paying agents. The term "*Registrar*" includes any co-registrar and the term "*Paying Agent*" includes any additional paying agent. The Issuers may change any Paying Agent or Registrar without notice to any Holder. The Issuers shall notify the Trustee in writing of the name and address of any Agent not a party to this Indenture. If the Issuers fail to appoint or maintain another entity as Registrar or Paying Agent, the Trustee shall act as such. The Issuers or any of the Subsidiaries may act as Paying Agent or Registrar. The Issuers initially appoint The Depository Trust Company ("*DTC*") to act as Depositary with respect to the Global Notes. The Issuers initially appoint the Trustee to act as the Registrar and Paying Agent and to act as Notes Custodian with respect to the Global Notes.

**Section 2.4        Paying Agent to Hold Money in Trust**

The Issuers shall require each Paying Agent other than the Trustee to agree in writing that the Paying Agent shall hold in trust for the benefit of Holders or the Trustee all money held by the Paying Agent for the payment of principal, premium, if any, or Interest (or Liquidated Damages, if any) on the Notes, and shall promptly notify the Trustee in writing of any default by the Issuers in making any such payment. While any such default continues, the Trustee may require a Paying Agent to pay all money held by it to the Trustee. The Issuers at any time may require a Paying Agent to pay all money held by it to the Trustee. Upon payment over to the Trustee, the Paying Agent (if other than one of the Issuers or one of the Subsidiaries) shall have no further liability for the money. If one of the Issuers or one of the Subsidiaries acts as Paying Agent, it shall segregate and hold in a separate trust fund for the benefit of the Holders all money held by it as Paying Agent. Upon any bankruptcy or reorganization proceedings relating to the Issuers, the Trustee shall serve as Paying Agent for the Notes.

**Section 2.5        Holder Lists**

The Trustee shall preserve in as current a form as is reasonably practicable the most recent list available to it of the names and addresses of all Holders and shall otherwise comply with TIA § 312(a). If the Trustee is not the Registrar, the Issuers shall furnish, or shall cause the Registrar (if other than the Issuers or one of the Subsidiaries) to furnish, to the Trustee at least seven Business Days before each Interest Payment Date and at such other times as the Trustee may request in writing, a list in such form and as of

42

http://www.sec.gov/Archives/edgar/data/1326686/00010474690501476...

such date as the Trustee may reasonably require of the names and addresses of the Holders of Notes and the Issuers shall otherwise comply with TIA § 312(a).

**Section 2.6        Transfer and Exchange**

(a)        *Transfer and Exchange of Global Notes*.  A Global Note may not be transferred except as a whole by the Depositary to a nominee of the Depositary, by a nominee of the Depositary to the Depositary or to another nominee of the Depositary, or by the Depositary or any such nominee to a successor Depositary or a nominee of such successor Depositary.  All Global Notes shall be exchanged by the Issuers for Definitive Notes if (i) the Issuers deliver to the Trustee notice from the Depositary that (x) the Depositary is unwilling or unable to continue to act as Depositary for the Global Notes, or (y) the Depositary is no longer a clearing agency registered under the Exchange Act, and in either case, the Issuers fail to appoint a successor Depositary within 90 days of such notice from the Depositary, (ii) the Issuers, in the Issuers' sole discretion, determine that the Global Notes (in whole but not in part) should be exchanged for Definitive Notes and delivers a written notice to such effect to the Trustee or (iii) there shall have occurred and be continuing a Default or Event of Default with respect to the Notes; *provided*, that in no event shall the Reg S Temporary Global Note be exchanged by the Issuers for Definitive Notes prior to (x) the expiration of the Distribution Compliance Period and (y) the receipt by the Registrar of any certificate identified by the Issuers and the Issuers' counsel to be required pursuant to Rule 903 or Rule 904 under the Securities Act.  Upon the occurrence of any of the preceding events in (i), (ii) or (iii) above, Definitive Notes shall be issued in such names as the Depositary shall instruct the Trustee.  Global Notes also may be exchanged or replaced, in whole or in part, as provided in Sections 2.7 and 2.10 hereof.  Every Note authenticated and delivered in exchange for, or in lieu of, a Global Note or any portion thereof, pursuant to this Section 2.6 or Section 2.7 or 2.10 hereof, shall be authenticated and delivered in the form of, and shall be, a Global Note.  A Global Note may not be exchanged for another Note other than as provided in this Section 2.6(a), however, beneficial interests in a Global Note may be transferred and exchanged as provided in Section 2.6(b), (c) or (f) hereof.

(b)        *Transfer and Exchange of Beneficial Interests in the Global Notes*.  The transfer and exchange of beneficial interests in the Global Notes shall be effected through the Depositary, in accordance with the provisions of this Indenture and the Applicable Procedures.  Beneficial interests in the Restricted Global Notes shall be subject to restrictions on transfer comparable to those set forth herein to the extent required by the Securities Act.  Transfers of beneficial interests in the Global Notes also shall require compliance with either subparagraph (1) or (2) below, as applicable, as well as one or more of the other following subparagraphs, as applicable:

(1)        *Transfer of Beneficial Interests in the Same Global Note*.  Beneficial interests in any Restricted Global Note may be transferred to Persons who take delivery thereof in the form of a beneficial interest in the same Restricted Global Note in accordance with the transfer restrictions set forth in the Private Placement Legend; *provided*, however, that prior to the expiration of the Distribution Compliance Period, transfers of beneficial interests in the Reg S Temporary Global Note may not be made to

43

10/15/2007 11:13 AM

a U.S. Person or for the account or benefit of a U.S. Person (other than an Initial Purchaser). Beneficial interests in any Unrestricted Global Note may be transferred to Persons who take delivery thereof in the form of a beneficial interest in an Unrestricted Global Note. No written orders or instructions shall be required to be delivered to the Registrar to effect the transfers described in this Section 2.6(b)(1), but the Issuers or the Trustee may request an Opinion of Counsel.

(2)     *All Other Transfers and Exchanges of Beneficial Interests in Global Notes (including for Definitive Notes)*. In connection with all transfers and exchanges of beneficial interests that are not subject to Section 2.6(b)(1) hereof, the transferor of such beneficial interest must deliver to the Registrar either (A) (1) a written order from a Participant or an Indirect Participant, in each case, given to the Depositary in accordance with the Applicable Procedures directing the Depositary to credit or cause to be credited a beneficial interest in another Global Note in an amount equal to the beneficial interest to be transferred or exchanged and (2) instructions given in accordance with the Applicable Procedures containing information regarding the Participant account to be credited with such increase or (B) (1) a written order from a Participant or an Indirect Participant, in each case, given to the Depositary in accordance with the Applicable Procedures directing the Depositary to cause to be issued a Definitive Note in an amount equal to the beneficial interest to be transferred or exchanged and (2) instructions given by the Depositary to the Registrar containing information regarding the Person in whose name such Definitive Note shall be registered to effect the transfer or exchange referred to in (B)(1) above; *provided*, that in no event shall Definitive Notes be issued upon the transfer or exchange of beneficial interests in the Reg S Temporary Global Note prior to (x) the expiration of the Distribution Compliance Period and (y) the receipt by the Registrar of any certificates identified by the Issuers or the Issuers' counsel to be required pursuant to Rule 903 and Rule 904 under the Securities Act. Upon consummation of an Exchange Offer by the Issuers in accordance with Section 2.6(f) hereof, the requirements of this Section 2.6(b)(2) shall be deemed to have been satisfied upon receipt by the Registrar of the instructions contained in the Letter of Transmittal delivered by the Holder of such beneficial interests in the Restricted Global Notes. Upon satisfaction of all of the requirements for transfer or exchange of beneficial interests in Global Notes contained in this Indenture and the Notes or otherwise applicable under the Securities Act, the Trustee shall adjust the principal amount of the relevant Global Note(s) pursuant to Section 2.6(h) hereof.

(3)     *Transfer of Beneficial Interests to Another Restricted Global Note*. A beneficial interest in any Restricted Global Note may be transferred to a Person who takes delivery thereof in the form of a beneficial interest in another Restricted Global Note if the transfer complies with the requirements of Section 2.6(b)(2) hereof and the Registrar receives the following:

(A)
if the transferee will take delivery in the form of a beneficial interest in the 144A Global Note, then the transferor must deliver a certificate in the form of Exhibit B hereto, including the certifications in item (1) thereof;

44

(B)

if the transferee will take delivery in the form of a beneficial interest in the 501 Global Note, then the transferor must deliver a certificate in the form of Exhibit B hereto, including the certifications in item (3)(d) thereof; or

(C)

if the transferee will take delivery in the form of a beneficial interest in the Reg S Temporary Global Note or the Reg S Permanent Global Note, then the transferor must deliver a certificate in the form of Exhibit B hereto, including the certifications in item (2) thereof.

(4)     *Transfer and Exchange of Beneficial Interests in a Restricted Global Note for Beneficial Interests in an Unrestricted Global Note.*  A beneficial interest in any Restricted Global Note may be exchanged by any holder thereof for a beneficial interest in an Unrestricted Global Note or transferred to a Person who takes delivery thereof in the form of a beneficial interest in an Unrestricted Global Note if the exchange or transfer complies with the requirements of Section 2.6(b)(2) hereof and:

(A)

such exchange or transfer is effected pursuant to the Exchange Offer in accordance with the Registration Rights Agreement and Section 2.6(f) hereof, and the holder of the beneficial interest to be transferred, in the case of an exchange, or the transferee, in the case of a transfer, certifies in the applicable Letter of Transmittal that it is not (1) a Broker-Dealer, (2) a Person participating in the distribution of the Exchange Notes or (3) a Person who is an affiliate (as defined in Rule 144) of any of the Issuers;

(B)

such transfer is effected pursuant to the Shelf Registration in accordance with the Registration Rights Agreement and a certificate to the effect set forth in Exhibit B hereto, including the certifications in item (3)(c) thereof, is delivered by the transferor;

(C)

such transfer is effected by a Broker-Dealer pursuant to the Exchange Offer Registration Statement in accordance with the Registration Rights Agreement and a certificate to the effect set forth in Exhibit B hereto, including the certifications in item (3)(c) thereof, is delivered by the transferor; or

(D)

the Registrar receives the following: (1) if the holder of such beneficial interest in a Restricted Global Note proposes to exchange such beneficial interest for a beneficial interest in an Unrestricted Global Note, a certificate from such holder in the form of Exhibit C hereto, including the certifications in item (1)(a) thereof; or (2) if the holder of such beneficial interest in a Restricted Global Note proposes to transfer such beneficial interest to a Person who shall take delivery thereof in the form of a beneficial interest in an Unrestricted Global Note, a certificate from such holder in the form of Exhibit B hereto, including the certifications in item (4) thereof; and, in each such case set forth in this subparagraph (D), an Opinion of Counsel in form, and from legal counsel, reasonably acceptable to the Registrar and the Issuers to the effect that such exchange or transfer is in compliance with the Securities Act and that the

45

restrictions on transfer contained herein and in the Private Placement Legend are no longer required in order to maintain compliance with the Securities Act.

If any such transfer is effected pursuant to subparagraph (B) or (D) above at a time when an Unrestricted Global Note has not yet been issued, the Issuers shall issue and, upon receipt of an Authentication Order in accordance with Section 2.2 hereof, the Trustee shall authenticate one or more Unrestricted Global Notes in an aggregate principal amount equal to the aggregate principal amount of beneficial interests transferred pursuant to subparagraph (B) or (D) above. Beneficial interests in an Unrestricted Global Note cannot be exchanged for, or transferred to Persons who take delivery thereof in the form of, a beneficial interest in a Restricted Global Note.

(c)      *Transfer and Exchange of Beneficial Interests for Definitive Notes.* Transfer and exchange of beneficial interests in the Global Notes for Definitive Notes shall be made subject to compliance with this Section 2.6(c), and the requesting Holder shall provide any certifications, documents and information, as applicable, required pursuant to the following provisions of this Section 2.6(c). Upon receipt of such applicable documentation, the Trustee shall cause the aggregate principal amount of the applicable Restricted Global Note or Unrestricted Global Note, as applicable, to be reduced accordingly pursuant to Section 2.6(h) hereof, and the Issuers shall execute and, upon receipt of an Authentication Order pursuant to Section 2.2 hereof, the Trustee shall authenticate and deliver to the Person designated in the instructions a Restricted Definitive Note or an Unrestricted Definitive Note, as applicable, in the appropriate principal amount. Any Definitive Note issued in exchange for a beneficial interest in a Global Note pursuant to this Section 2.6(c) shall be registered in such name or names and in such authorized denomination or denominations as the Holder of such beneficial interest shall instruct the Registrar through instructions from the Depositary and the Participant or Indirect Participant. The Trustee shall deliver such Definitive Notes to the Persons in whose names such Definitive Notes are so registered.

(1)      *Beneficial Interests in Restricted Global Notes to Restricted Definitive Notes.* If any holder of a beneficial interest in a Restricted Global Note proposes to exchange such beneficial interest for a Restricted Definitive Note or to transfer such beneficial interest to a Person who takes delivery thereof in the form of a Restricted Definitive Note, then, upon receipt by the Registrar of the following documentation:

(A)
if the holder of such beneficial interest in a Restricted Global Note proposes to exchange such beneficial interest for a Restricted Definitive Note, a certificate from such holder in the form of Exhibit C hereto, including the certifications in item (2)(a) thereof;

(B)
if such beneficial interest is being transferred to a QIB in accordance with Rule 144A, a certificate to the effect set forth in Exhibit B hereto, including the certifications in item (1) thereof;

46

(C)

if such beneficial interest is being transferred to a Non-U.S. Person in an offshore transaction in accordance with Rule 903 or Rule 904 under the Securities Act, a certificate to the effect set forth in Exhibit B hereto, including the certifications in item (2) thereof;

(D)

if such beneficial interest is being transferred to an Institutional Accredited Investor in reliance on an exemption from the registration requirements of the Securities Act other than those listed in subparagraphs (B) and (C) above, a certificate to the effect set forth in Exhibit B hereto, including the certifications, certificates and Opinion of Counsel required by item (3)(d) thereof, if applicable; or

(E)    if such beneficial interest is being transferred to the Issuers or any of the Subsidiaries, a certificate to the effect set forth in Exhibit B hereto, including the certifications in item (3)(b) thereof.

Any Restricted Definitive Note issued in exchange for a beneficial interest in a Restricted Global Note pursuant to this Section 2.6(c)(1) shall bear the Private Placement Legend and shall be subject to all restrictions on transfer contained therein.

(2)    *Beneficial Interests in Restricted Global Notes to Unrestricted Definitive Notes.*  A holder of a beneficial interest in a Restricted Global Note may exchange such beneficial interest for an Unrestricted Definitive Note or may transfer such beneficial interest to a Person who takes delivery thereof in the form of an Unrestricted Definitive Note only if:

(A)

such exchange or transfer is effected pursuant to the Exchange Offer in accordance with the Registration Rights Agreement and Section 2.6(f) hereof, and the holder of such beneficial interest, in the case of an exchange, or the transferee, in the case of a transfer, certifies in the applicable Letter of Transmittal that it is not (1) a Broker-Dealer, (2) a Person participating in the distribution of the Exchange Notes or (3) a Person who is an affiliate (as defined in Rule 144) of any of the Issuers;

(B)

such transfer is effected pursuant to the Shelf Registration in accordance with the Registration Rights Agreement and a certificate to the effect set forth in Exhibit B hereto, including the certifications in item (3)(c) thereof, is delivered by the transferor;

(C)

such transfer is effected by a Broker-Dealer pursuant to the Exchange Offer Registration Statement in accordance with the Registration Rights Agreement and a certificate to the effect set forth in Exhibit B hereto, including the certifications in item (3)(c) thereof, is delivered by the transferor; or

(D)

the Registrar receives the following: (1) if the holder of such beneficial interest in a Restricted Global Note proposes to exchange such beneficial interest for an Unrestricted Definitive Note, a certificate from such holder in the form of Exhibit C hereto, including the certifications in item (1)(b)

47

thereof; or (2) if the holder of such beneficial interest in a Restricted Global Note proposes to transfer such beneficial interest to a Person who shall take delivery thereof in the form of an Unrestricted Definitive Note, a certificate from such holder in the form of Exhibit B hereto, including the certifications in item (4) thereof; and, in each such case set forth in this subparagraph (D), an Opinion of Counsel in form, and from legal counsel, reasonably acceptable to the Registrar and the Issuers to the effect that such exchange or transfer is in compliance with the Securities Act and that the restrictions on transfer contained herein and in the Private Placement Legend are no longer required in order to maintain compliance with the Securities Act.

Beneficial interests in an Unrestricted Global Note cannot be exchanged for, or transferred to Persons who take delivery thereof in the form of, a Restricted Definitive Note.

(3)  *Beneficial Interests in Unrestricted Global Notes to Unrestricted Definitive Notes.* If any holder of a beneficial interest in an Unrestricted Global Note proposes to exchange such beneficial interest for an Unrestricted Definitive Note or to transfer such beneficial interest to a Person who takes delivery thereof in the form of an Unrestricted Definitive Note, then such holder shall satisfy the applicable conditions set forth in Section 2.6(b)(2) hereof. Any Unrestricted Definitive Note issued in exchange for a beneficial interest pursuant to this Section 2.6(c)(3) shall not bear the Private Placement Legend.

(4)  *Transfer or Exchange of Reg S Temporary Global Notes.* Notwithstanding the other provisions of this Section 2.6, a beneficial interest in the Reg S Temporary Global Note may not be (A) exchanged for a Definitive Note prior to (x) the expiration of the Distribution Compliance Period (unless such exchange is approved by the Issuers, does not require an investment decision on the part of the Holder thereof and does not violate the provisions of Regulation S) and (y) the receipt by the Registrar of any certificates identified by the Issuers or their counsel to be required pursuant to Rule 903(b)(3)(ii)(B) under the Securities Act or (B) transferred to a Person who takes delivery thereof in the form of a Definitive Note prior to the events set forth in clause (A) above or unless the transfer is pursuant to an exemption from the registration requirements of the Securities Act other than Rule 903 or Rule 904.

(d)  *Transfer and Exchange of Definitive Notes for Beneficial Interests.* Transfer and exchange of Definitive Notes for beneficial interests in the Global Notes shall be made subject to compliance with this Section 2.6(d), and the requesting Holder shall provide any certifications, documents and information, as applicable, required pursuant to the following provisions of this Section 2.6(d). Upon receipt from such Holder of such applicable documentation and the surrender to the Registrar of the Definitive Notes duly endorsed or accompanied by a written instruction of transfer in form satisfactory to the Registrar, duly executed by such Holder or by its attorney, duly authorized in writing, the Registrar shall register the transfer or exchange of the Definitive Notes. The Trustee shall cancel such Definitive Notes so surrendered and cause the aggregate principal amount of the applicable Restricted Global Note or

48

Unrestricted Global Note, as applicable, to be increased accordingly pursuant to Section 2.6(h) hereof.

      (1)    *Restricted Definitive Notes to Beneficial Interests in Restricted Global Notes.*  If any Holder of a Restricted Definitive Note proposes to exchange such Note for a beneficial interest in a Restricted Global Note or to transfer such Restricted Definitive Notes to a Person who takes delivery thereof in the form of a beneficial interest in a Restricted Global Note, then, upon receipt by the Registrar of the following documentation:

      (A)

if the Holder of such Restricted Definitive Note proposes to exchange such Note for a beneficial interest in a Restricted Global Note, a certificate from such Holder in the form of Exhibit C hereto, including the certifications in item (2)(b) thereof;

      (B)

if such Restricted Definitive Note is being transferred to a QIB in accordance with Rule 144A, a certificate to the effect set forth in Exhibit B hereto, including the certifications in item (1) thereof;

      (C)

if such Restricted Definitive Note is being transferred to a Non-U.S. Person in an offshore transaction in accordance with Rule 903 or Rule 904 under the Securities Act, a certificate to the effect set forth in Exhibit B hereto, including the certifications in item (2) thereof; or

      (D)

if such Restricted Definitive Note is being transferred to an Institutional Accredited Investor in accordance with Regulation D under the Securities Act, a certificate to the effect set forth in Exhibit B hereto, including the certifications in item (3)(d) thereof;

the Trustee shall cancel the Restricted Definitive Note and increase or cause to be increased the aggregate principal amount of, in the case of clause (A) above, the appropriate Restricted Global Note, in the case of clause (B) above, the 144A Global Note, in the case of clause (C) above, the Regulation S Global Note and in the case of clause (D) above, the 501 Global Note.

      (2)    *Restricted Definitive Notes to Beneficial Interests in Unrestricted Global Notes.*  A Holder of a Restricted Definitive Note may exchange such Note for a beneficial interest in an Unrestricted Global Note or transfer such Restricted Definitive Note to a Person who takes delivery thereof in the form of a beneficial interest in an Unrestricted Global Note only if:

      (A)

such exchange or transfer is effected pursuant to the Exchange Offer in accordance with the Registration Rights Agreement and Section 2.6(f) hereof, and the Holder, in the case of an exchange, or the transferee, in the case of a transfer, certifies in the applicable Letter of Transmittal that it is not (1) a Broker-Dealer, (2) a Person participating in the distribution of the Exchange Notes or (3) a Person who is an affiliate (as defined in Rule 144) of any of the Issuers;

49

(B)

such transfer is effected pursuant to the Shelf Registration in accordance with the Registration Rights Agreement and a certificate to the effect set forth in Exhibit B hereto, including the certifications in item (3)(c) thereof, is delivered by the transferor;

(C)

such transfer is effected by a Broker-Dealer pursuant to the Exchange Offer Registration Statement in accordance with the Registration Rights Agreement and a certificate to the effect set forth in Exhibit B hereto, including the certifications in item (3)(c) thereof, is delivered by the transferor; or

(D)

the Registrar receives the following: (1) if the Holder of such Restricted Definitive Notes proposes to exchange such Notes for a beneficial interest in the Unrestricted Global Note, a certificate from such Holder in the form of Exhibit C hereto, including the certifications in item (1)(c) thereof; or (2) if the Holder of such Restricted Definitive Notes proposes to transfer such Notes to a Person who shall take delivery thereof in the form of a beneficial interest in the Unrestricted Global Note, a certificate from such Holder in the form of Exhibit B hereto, including the certifications in item (4) thereof; and, in each such case set forth in this subparagraph (D), an Opinion of Counsel in form, and from legal counsel, reasonably acceptable to the Registrar and the Issuers to the effect that such exchange or transfer is in compliance with the Securities Act and that the restrictions on transfer contained herein and in the Private Placement Legend are no longer required in order to maintain compliance with the Securities Act.

(3)    *Unrestricted Definitive Notes to Beneficial Interests in Unrestricted Global Notes.*  A Holder of an Unrestricted Definitive Note may exchange such Note for a beneficial interest in an Unrestricted Global Note or transfer such Definitive Notes to a Person who takes delivery thereof in the form of a beneficial interest in an Unrestricted Global Note at any time.

If any such exchange or transfer from a Definitive Note to a beneficial interest is effected pursuant to subparagraphs (2)(B), (2)(D) or (3) of this Section 2.6(d) at a time when an Unrestricted Global Note has not yet been issued, the Issuers shall issue and, upon receipt of an Authentication Order in accordance with Section 2.2 hereof, the Trustee shall authenticate one or more Unrestricted Global Notes in an aggregate principal amount equal to the principal amount of Definitive Notes so transferred.

(e)    *Transfer and Exchange of Definitive Notes for Definitive Notes.*  Upon request by a Holder of Definitive Notes and such Holder's compliance with the provisions of this Section 2.6(e), the Registrar shall register the transfer or exchange of Definitive Notes.  Prior to such registration of transfer or exchange, the requesting Holder shall present or surrender to the Registrar the Definitive Notes duly endorsed or accompanied by a written instruction of transfer in form satisfactory to the Registrar duly executed by such Holder or by its attorney, duly authorized in writing.  The Trustee shall

50

cancel any such Definitive Notes so surrendered, and the Issuers shall execute and, upon receipt of an Authentication Order pursuant to Section 2.2 hereof, the Trustee shall authenticate and deliver to the Person designated in the instructions a Restricted Definitive Note or an Unrestricted Definitive Note, as applicable, in the appropriate principal amount. Any Definitive Note issued pursuant to this Section 2.6(e) shall be registered in such name or names and in such authorized denomination or denominations as the Holder of such beneficial interest shall instruct the Registrar through instructions from the Depositary and the Participant or Indirect Participant. The Trustee shall deliver such Definitive Notes to the Persons in whose names such Definitive Notes are so registered. In addition, the requesting Holder shall provide any additional certifications, documents and information, as applicable, required pursuant to the following provisions of this Section 2.6(e).

(1)     *Restricted Definitive Notes to Restricted Definitive Notes.*  Any Restricted Definitive Note may be transferred to and registered in the name of Persons who take delivery thereof in the form of a Restricted Definitive Note if the Registrar receives the following:

(A)
if the transfer will be made to a QIB pursuant to Rule 144A, then the transferor must deliver a certificate in the form of Exhibit B hereto, including the certifications in item (1) thereof;

(B)
if the transfer will be made pursuant to Rule 903 or Rule 904, then the transferor must deliver a certificate in the form of Exhibit B hereto, including the certifications in item (2) thereof;

(C)     if such beneficial interest is being transferred to an Institutional Accredited Investor in reliance on an exemption from the registration requirements of the Securities Act other than those listed in subparagraphs (A) and (B) above, then the transferor must deliver a certificate to the effect set forth in Exhibit B hereto, including the certifications, certificates and Opinion of Counsel required by item (3)(d) thereof, if applicable; or

(D)
if such beneficial interest is being transferred to the Issuers or any of the Subsidiaries, a certificate to the effect set forth in Exhibit B hereto, including the certifications in item (3)(b) thereof, must be delivered by the transferor.

(2)     *Restricted Definitive Notes to Unrestricted Definitive Notes.*  Any Restricted Definitive Note may be exchanged by the Holder thereof for an Unrestricted Definitive Note or transferred to a Person or Persons who take delivery thereof in the form of an Unrestricted Definitive Note if:

(A)
such exchange or transfer is effected pursuant to the Exchange Offer in accordance with the Registration Rights Agreement and Section 2.6(f) hereof, and the Holder, in the case of an exchange, or the transferee, in the case of a transfer, certifies in the applicable Letter of Transmittal

51

that it is not (1) a Broker-Dealer, (2) a Person participating in the distribution of the Exchange Notes or (3) a Person who is an affiliate (as defined in Rule 144) of any of the Issuers;

(B)

any such transfer is effected pursuant to the Shelf Registration in accordance with the Registration Rights Agreement and a certificate to the effect set forth in Exhibit B hereto, including the certifications in item (3)(c) thereof, is delivered by the transferor;

(C)

any such transfer is effected by a Broker-Dealer pursuant to the Exchange Offer Registration Statement in accordance with the Registration Rights Agreement and a certificate to the effect set forth in Exhibit B hereto, including the certifications in item (3)(c) thereof, is delivered by the transferor; or

(D)

the Registrar receives the following: (1) if the Holder of such Restricted Definitive Notes proposes to exchange such Notes for an Unrestricted Definitive Note, a certificate from such Holder in the form of Exhibit D hereto, including the certifications in item (1)(d) thereof; or (2) if the Holder of such Restricted Definitive Notes proposes to transfer such Notes to a Person who shall take delivery thereof in the form of an Unrestricted Definitive Note, a certificate from such Holder in the form of Exhibit B hereto, including the certifications in item (4) thereof; and, in each such case set forth in this subparagraph (D), an Opinion of Counsel in form, and from legal counsel, reasonably acceptable to the Registrar and the Issuers to the effect that such exchange or transfer is in compliance with the Securities Act and that the restrictions on transfer contained herein and in the Private Placement Legend are no longer required in order to maintain compliance with the Securities Act.

(3)     *Unrestricted Definitive Notes to Unrestricted Definitive Notes.*  A Holder of Unrestricted Definitive Notes may transfer such Notes to a Person who takes delivery thereof in the form of an Unrestricted Definitive Note.  Upon receipt of a request to register such a transfer, the Registrar shall register the Unrestricted Definitive Notes pursuant to the instructions from the Holder thereof.

(f)     *Exchange Offer.*  Upon the occurrence of the Exchange Offer in accordance with the Registration Rights Agreement, the Issuers shall issue and, upon receipt of an Authentication Order in accordance with Section 2.2 hereof and an Opinion of Counsel delivered to the Trustee as to the matters set forth in paragraphs (1) and (2) below of this Section 2.6(f) and such other matters customarily covered in connection with an exchange offer as the Trustee may reasonably request, the Trustee shall authenticate (i) one or more Unrestricted Global Notes in an aggregate principal amount equal to the sum of (A) the principal amount of the beneficial interests in the Restricted Global Notes exchanged or transferred for beneficial interests in Unrestricted Global Notes in connection with the Exchange Offer pursuant to Section 2.6(b)(4) hereof and (B) the principal amount of Restricted Definitive Notes exchanged or transferred for beneficial interests in Unrestricted Global Notes in connection with the Exchange Offer pursuant to Section 2.6(d)(2) hereof, in each case tendered for acceptance by Persons that

52

certify in the applicable Letters of Transmittal that (x) they are not Broker-Dealers, (y) they are not participating in a distribution of the Exchange Notes and (z) they are not affiliates (as defined in Rule 144) of the Issuers, and accepted for exchange in the Exchange Offer, and (ii) Unrestricted Definitive Notes in an aggregate principal amount equal to the sum of (A) the principal amount of the Restricted Definitive Notes exchanged or transferred for Unrestricted Definitive Notes in connection with the Exchange Offer pursuant to Section 2.6(e)(2) hereof and (B) Restricted Global Notes exchanged or transferred for Unrestricted Definitive Notes in connection with the Exchange Offer pursuant to Section 2.6(c)(2) hereof, in each case tendered for acceptance by Persons that certify in the applicable Letters of Transmittal that (x) they are not Broker-Dealers, (y) they are not participating in a distribution of the Exchange Notes and (z) they are not affiliates (as defined in Rule 144) of the Issuers, and accepted for exchange in the Exchange Offer. Concurrently with the issuance of such Notes, the Trustee shall cancel any Definitive Notes so surrendered and shall cause the aggregate principal amount of the applicable Restricted Global Notes to be reduced accordingly, and the Issuers shall execute and, upon receipt of an Authentication Order pursuant to Section 2.2 hereof, the Trustee shall authenticate and deliver to the Persons designated by the Holders of Definitive Notes so accepted Definitive Notes in the appropriate principal amount.

The Opinion of Counsel for the Issuers referenced above shall state that:

(1)

the issuance and sale of the Exchange Notes by the Issuers has been duly authorized and, when executed by the Issuers and authenticated by the Trustee in accordance with the provisions of this Indenture and delivered in exchange for Series A Notes in accordance with this Indenture and the Exchange Offer, the Exchange Notes shall be entitled to the benefits of this Indenture and shall be valid and binding obligations of the Issuers, enforceable against the Issuers in accordance with their terms, subject to customary qualifications including exceptions for bankruptcy, fraudulent transfer and equitable principles; and

(2)

when the Exchange Notes are issued and executed by the Issuers and authenticated by the Trustee in accordance with the provisions of this Indenture and delivered in exchange for Series A Notes in accordance with this Indenture and the Exchange Offer, the Guarantees by the Guarantors endorsed thereon shall be entitled to the benefits of this Indenture and shall be the valid and binding obligations of the Guarantors, enforceable against the Guarantors in accordance with their terms, subject to customary qualifications including exceptions for bankruptcy, fraudulent transfer and equitable principles.

(g)      *Legends*.  The following legends shall appear on the face of all Global Notes and Definitive Notes issued under this Indenture unless specifically stated otherwise in the applicable provisions of this Indenture.

(i)      *Private Placement Legend*.

53

(A)

Except as permitted by subparagraph (B) below, each Global Note and each Definitive Note (and all Notes issued in exchange therefor or substitution thereof) shall bear the legend in substantially the following form:

THIS SECURITY HAS NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE "SECURITIES ACT"), OR ANY STATE SECURITIES LAWS. NEITHER THIS SECURITY NOR ANY INTEREST OR PARTICIPATION HEREIN MAY BE REOFFERED, SOLD, ASSIGNED, TRANSFERRED, PLEDGED, ENCUMBERED OR OTHERWISE DISPOSED OF IN THE ABSENCE OF SUCH REGISTRATION OR UNLESS SUCH TRANSACTION IS EXEMPT FROM, OR NOT SUBJECT TO, REGISTRATION. THE HOLDER OF THIS SECURITY BY ITS ACCEPTANCE HEREOF (1) REPRESENTS THAT (X) IT IS A "QUALIFIED INSTITUTIONAL BUYER" (AS DEFINED IN RULE 144A UNDER THE SECURITIES ACT), (Y) IT IS A NON-U.S. PURCHASER AND IS ACQUIRING THIS SECURITY IN AN OFFSHORE TRANSACTION WITHIN THE MEANING OF REGULATION S UNDER THE SECURITIES ACT, OR (Z) IT IS AN INSTITUTIONAL "ACCREDITED INVESTOR" WITHIN THE MEANING OF SUBPARAGRAPH (a)(1), (2), (3) OR (7) OF RULE 501 UNDER THE SECURITIES ACT, AND (2) AGREES TO OFFER, SELL OR OTHERWISE TRANSFER SUCH SECURITY, PRIOR TO THE DATE THAT IS TWO YEARS (OR SUCH OTHER PERIOD THAT MAY HEREAFTER BE PROVIDED UNDER RULE 144(k) UNDER THE SECURITIES ACT AS PERMITTING RESALES OF RESTRICTED SECURITIES BY NON-AFFILIATES WITHOUT RESTRICTION) AFTER THE LATER OF THE ORIGINAL ISSUE DATE HEREOF AND THE LAST DATE ON WHICH THE ISSUERS OR ANY AFFILIATE OF THE ISSUERS WAS THE OWNER OF THIS SECURITY (OR ANY PREDECESSOR OF SUCH SECURITY), ONLY (A) TO THE ISSUERS OR ANY SUBSIDIARIES OF THE ISSUERS, (B) PURSUANT TO A REGISTRATION STATEMENT THAT HAS BEEN DECLARED EFFECTIVE UNDER THE SECURITIES ACT, (C) FOR SO LONG AS THIS SECURITY IS ELIGIBLE FOR RESALE PURSUANT TO RULE 144A UNDER THE SECURITIES ACT, TO A PERSON IT REASONABLY BELIEVES IS A "QUALIFIED INSTITUTIONAL BUYER" AS DEFINED IN RULE 144A UNDER THE SECURITIES ACT THAT PURCHASES FOR ITS OWN ACCOUNT OR FOR THE ACCOUNT OF A QUALIFIED INSTITUTIONAL BUYER TO WHOM NOTICE IS GIVEN THAT THE TRANSFER IS BEING MADE IN RELIANCE ON RULE 144A UNDER THE SECURITIES ACT, (D) PURSUANT TO OFFERS AND SALES TO NON-U.S. PERSONS THAT OCCUR OUTSIDE THE UNITED STATES WITHIN THE MEANING OF REGULATION S UNDER THE SECURITIES ACT, (E) TO AN INSTITUTIONAL "ACCREDITED INVESTOR" WITHIN THE MEANING OF SUBPARAGRAPH (a)(1), (2), (3) OR (7) OF RULE 501 UNDER THE SECURITIES ACT THAT IS ACQUIRING THIS SECURITY FOR ITS OWN ACCOUNT, OR FOR THE ACCOUNT OF SUCH AN INSTITUTIONAL "ACCREDITED INVESTOR," FOR INVESTMENT PURPOSES AND NOT WITH A VIEW TO, OR FOR OFFER OR SALE IN CONNECTION WITH, ANY

54

DISTRIBUTION IN VIOLATION OF THE SECURITIES ACT, OR (F) PURSUANT TO ANOTHER AVAILABLE EXEMPTION FROM THE REGISTRATION REQUIREMENTS OF THE SECURITIES ACT, SUBJECT TO THE ISSUERS' AND THE TRUSTEE'S RIGHT PRIOR TO ANY SUCH OFFER, SALE OR TRANSFER PURSUANT TO CLAUSE (D), (E), OR (F) TO REQUIRE THE DELIVERY OF AN OPINION OF COUNSEL, CERTIFICATIONS AND/OR OTHER INFORMATION SATISFACTORY TO EACH OF THEM, AND IN EACH OF THE FOREGOING CASES, A CERTIFICATE OF TRANSFER IN THE FORM APPEARING ON THIS SECURITY IS COMPLETED AND DELIVERED BY THE TRANSFEROR TO THE TRUSTEE AND IN EACH CASE IN ACCORDANCE WITH APPLICABLE SECURITIES LAWS OF ANY U.S. STATE OR ANY OTHER APPLICABLE JURISDICTION.

(B)
Notwithstanding the foregoing, any Global Note or Definitive Note issued pursuant to subparagraphs (b)(4), (c)(2), (c)(3), (d)(2), (d)(3), (e)(2), (e)(3) or (f) to this Section 2.6 (and all Notes issued in exchange therefor or substitution thereof) shall not bear the Private Placement Legend.

(ii)     *Global Note Legend.*  To the extent required by the Depositary, each Global Note shall bear legends in substantially the following forms:

THIS GLOBAL NOTE IS HELD BY THE DEPOSITARY (AS DEFINED IN THE INDENTURE GOVERNING THIS NOTE) OR ITS NOMINEE IN CUSTODY FOR THE BENEFIT OF THE BENEFICIAL OWNERS HEREOF, AND IS NOT TRANSFERABLE TO ANY PERSON UNDER ANY CIRCUMSTANCES EXCEPT THAT (I) THE TRUSTEE MAY MAKE SUCH NOTATIONS HEREON AS MAY BE REQUIRED PURSUANT TO SECTION 2.6 OF THE INDENTURE, (II) THIS GLOBAL NOTE MAY BE EXCHANGED IN WHOLE BUT NOT IN PART PURSUANT TO SECTION 2.6(a) OF THE INDENTURE, (III) THIS GLOBAL NOTE MAY BE DELIVERED TO THE TRUSTEE FOR CANCELLATION PURSUANT TO SECTION 2.11 OF THE INDENTURE AND (IV) THIS GLOBAL NOTE MAY BE TRANSFERRED TO A SUCCESSOR DEPOSITARY WITH THE PRIOR WRITTEN CONSENT OF THE ISSUERS.

UNLESS AND UNTIL IT IS EXCHANGED IN WHOLE OR IN PART FOR NOTES IN DEFINITIVE FORM, THIS NOTE MAY NOT BE TRANSFERRED EXCEPT AS A WHOLE BY THE DEPOSITARY TO A NOMINEE OF THE DEPOSITARY OR BY A NOMINEE OF THE DEPOSITARY TO THE DEPOSITARY OR ANOTHER NOMINEE OF THE DEPOSITARY OR BY THE DEPOSITARY OR ANY SUCH NOMINEE TO A SUCCESSOR DEPOSITARY OR A NOMINEE OF SUCH SUCCESSOR DEPOSITARY.  UNLESS THIS CERTIFICATE IS PRESENTED BY AN AUTHORIZED REPRESENTATIVE OF THE DEPOSITORY TRUST COMPANY (55 WATER STREET, NEW YORK, NEW YORK) ("DTC"), TO THE ISSUERS OR THEIR AGENT FOR REGISTRATION OF TRANSFER, EXCHANGE OR PAYMENT,

55

AND ANY CERTIFICATE ISSUED IS REGISTERED IN THE NAME OF CEDE & CO. OR SUCH OTHER NAME AS MAY BE REQUESTED BY AN AUTHORIZED REPRESENTATIVE OF DTC (AND ANY PAYMENT IS MADE TO CEDE & CO. OR SUCH OTHER ENTITY AS MAY BE REQUESTED BY AN AUTHORIZED REPRESENTATIVE OF DTC), ANY TRANSFER, PLEDGE OR OTHER USE HEREOF FOR VALUE OR OTHERWISE BY OR TO ANY PERSON IS WRONGFUL INASMUCH AS THE REGISTERED OWNER HEREOF, CEDE & CO., HAS AN INTEREST HEREIN.

(iii)    *Reg S Temporary Global Note Legend*.  To the extent required by the Depositary, each Reg S Temporary Global Note shall bear a legend in substantially the following form:

THE RIGHTS ATTACHING TO THIS REGULATION S TEMPORARY GLOBAL NOTE, AND THE CONDITIONS AND PROCEDURES GOVERNING ITS EXCHANGE FOR DEFINITIVE NOTES, ARE AS SPECIFIED IN THE INDENTURE (AS DEFINED HEREIN).  NEITHER THE HOLDER NOR THE BENEFICIAL OWNERS OF THIS REGULATION S TEMPORARY GLOBAL NOTE SHALL BE ENTITLED TO RECEIVE CASH PAYMENTS OF INTEREST DURING THE PERIOD WHICH SUCH HOLDER HOLDS THIS NOTE.  NOTHING IN THIS LEGEND SHALL BE DEEMED TO PREVENT INTEREST FROM ACCRUING ON THIS NOTE.

(h)    *Cancellation and/or Adjustment of Global Notes*.  At such time as all beneficial interests in a particular Global Note have been exchanged for Definitive Notes or a particular Global Note has been redeemed, repurchased or cancelled in whole and not in part, each such Global Note shall be returned to or retained and cancelled by the Trustee in accordance with Section 2.11 hereof.  At any time prior to such cancellation, if any beneficial interest in a Global Note is exchanged for or transferred to a Person who will take delivery thereof in the form of a beneficial interest in another Global Note or for Definitive Notes, the principal amount of Notes represented by such Global Note shall be reduced accordingly and an endorsement shall be made on such Global Note by the Trustee or by the Depositary at the direction of the Trustee to reflect such reduction; and if the beneficial interest is being exchanged for or transferred to a Person who will take delivery thereof in the form of a beneficial interest in another Global Note, such other Global Note shall be increased accordingly and an endorsement shall be made on such Global Note by the Trustee or by the Depositary at the direction of the Trustee to reflect such increase.

56

(i)    *General Provisions Relating to Transfers and Exchanges*.

(i)    To permit registrations of transfers and exchanges, the Issuers shall execute and the Trustee shall authenticate Global Notes and Definitive Notes upon receipt of an Authentication Order.

(ii)    No service charge shall be made to a holder of a beneficial interest in a Global Note or to a Holder of a Definitive Note for any registration of transfer or exchange, but the Issuers may require payment of a sum sufficient to cover any transfer tax or similar governmental charge payable in connection therewith (other than any such transfer taxes or similar governmental charge payable upon exchange or transfer pursuant to Section 2.10, 3.6, 4.13 or 4.14 hereof).

(iii)    The Registrar shall not be required to register the transfer of or exchange any Note selected for redemption in whole or in part, except the unredeemed portion of any Note being redeemed in part.

(iv)    All Global Notes and Definitive Notes issued upon any registration of transfer or exchange of Global Notes or Definitive Notes shall be the valid obligations of the Issuers, evidencing the same Indebtedness, and entitled to the same benefits under this Indenture, as the Global Notes or Definitive Notes surrendered upon such registration of transfer or exchange.

(v)    The Issuers shall not be required (A) to issue, to register the transfer of or to exchange any Notes during a period beginning at the opening of business 15 days before the day of any mailing of a notice of redemption of Notes under Section 3.2 hereof and ending at the close of business on the day of selection, (B) to register the transfer of or to exchange any Note so selected for redemption in whole or in part, except the unredeemed portion of any Note being redeemed in part or (C) to register the transfer of or to exchange a Note between an Interest Record Date and the next succeeding Interest Payment Date.

(vi)    Prior to due presentment for the registration of a transfer of any Note, the Trustee, any Agent and the Issuers may deem and treat the Person in whose name any Note is registered as the absolute owner of such Note for the purpose of receiving payment of principal of and premium, if any, and Interest (and Liquidated Damages, if any) on such Notes

and for all other purposes, and none of the Trustee, any Agent or the Issuers shall be affected by notice to the contrary.

(vii)    The Trustee shall authenticate Global Notes and Definitive Notes in accordance with the provisions of Section 2.2 hereof.

Each Holder of a Note agrees to indemnify the Issuers and the Trustee against any liability that may result from the transfer, exchange or assignment of such Holder's Note in violation of any provision of this Indenture and/or applicable United States federal or state securities law.

57

The Trustee shall have no obligation or duty to monitor, determine or inquire as to compliance with any restrictions on transfer imposed under this Indenture or under applicable law with respect to any transfer of any interest in any Note (including any transfers between or among depositary participants or beneficial owners of interests in any Global Note) other than to require delivery of such certificates and other documentation or evidence as are expressly required by, and to do so if and when expressly required by the terms of, this Indenture, and to examine the same to determine substantial compliance as to form with the express requirements hereof.

Neither the Trustee nor any Agent shall have any responsibility for any actions taken or not taken by the Depositary.

(viii)    All certifications, certificates and Opinions of Counsel required to be submitted to the Registrar pursuant to this Section 2.6 to effect a registration of transfer or exchange may be submitted by facsimile.

Notwithstanding anything herein to the contrary, as to any certifications and certificates delivered to the Registrar pursuant to this Section 2.6, the Registrar's duties shall be limited to confirming that any such certifications and certificates delivered to it are in the form of Exhibits A, B, C, D and E attached hereto.  The Registrar shall not be responsible for confirming the truth or accuracy of representations made in any such certifications or certificates.

**Section 2.7**        **Replacement Notes**

If any mutilated Note is surrendered to the Trustee or the Issuers or if the Trustee or the Issuers receive evidence (which evidence may be from the Trustee) to their satisfaction of the destruction, loss or theft of any Note, the Issuers shall issue and the Trustee, upon receipt of an Authentication Order, shall authenticate a replacement Note if the Trustee's requirements are met.  An affidavit of lost certificate and/or an indemnity bond or other indemnity must be supplied by the requesting Holder that is sufficient in the judgment of the Trustee and the Issuers to protect the Issuers, the Trustee, any Agent and any authenticating agent from any loss that any of them may suffer if a Note is replaced.  The Issuers may charge for its expenses in replacing a Note, including reasonable fees and expenses of their counsel and of the Trustee and its counsel.  Every replacement Note is an additional obligation of the Issuers and shall be entitled to all of the benefits of this Indenture equally and proportionately with all other Notes duly issued hereunder.

**Section 2.8**        **Outstanding Notes**

The Notes outstanding at any time are all the Notes authenticated by the Trustee (including any Note represented by a Global Note) except for those cancelled by it or at the Issuers' direction, those delivered to it for cancellation, those reductions in the interest in a Global Note effected by the Trustee in accordance with the provisions hereof, and those described in this Section 2.8 as not outstanding.  Except as set forth in Section 2.9 hereof, a Note does not cease to be outstanding because any of the Issuers or

58

an Affiliate of any of the Issuers holds the Note.  If a Note is replaced pursuant to Section 2.7 hereof, such Note, together with the Guarantee of that particular Note endorsed thereon, ceases to be outstanding unless the Trustee receives proof satisfactory to it that the replaced Note is held by a *bona fide*
purchaser.  If the principal amount of any Note is considered paid under Section 4.1 hereof, it ceases to be outstanding and Interest (and Liquidated Damages, if any) on it ceases to accrue.  If the Paying Agent (other than the Issuers, a subsidiary or an Affiliate of any thereof) holds, on a redemption date or the maturity date, money sufficient to pay Notes payable on that date, then on and after that date such Notes shall be deemed to be no longer outstanding, and such Notes shall cease to accrue Interest.

**Section 2.9       Treasury Notes**

In determining whether the Holders of the required principal amount of Notes have concurred in any direction, waiver or consent, Notes owned by any of the Issuers, or by any Person directly or indirectly controlling or controlled by or under direct or indirect common control with any of the Issuers, shall be considered as though not outstanding, except that for the purposes of determining whether the Trustee shall be protected in conclusively relying on any such direction, waiver or consent, only Notes that a Responsible Officer of the Trustee actually knows are so owned shall be so disregarded.

**Section 2.10      Temporary Notes**

Until certificates representing Notes are ready for delivery, the Issuers may prepare and the Trustee, upon receipt of an Authentication Order, shall authenticate temporary Notes.  Temporary Notes shall be substantially in the form of Definitive Notes but may have variations that the Issuers consider appropriate for temporary Notes and as shall be reasonably acceptable to the Trustee.  Without unreasonable delay, the Issuers shall prepare and the Trustee shall authenticate Definitive Notes in exchange for temporary Notes.  Until such exchange, holders of temporary Notes shall be entitled to all of the benefits of this Indenture.

**Section 2.11      Cancellation**

The Issuers at any time may deliver Notes to the Trustee for cancellation.  The Registrar and Paying Agent shall forward to the Trustee any Notes surrendered to them for registration of transfer, exchange or payment.  The Trustee, or at the direction of the Trustee, the Registrar or the Paying Agent (other than the Issuers, a subsidiary or an Affiliate of any thereof), and no one else, shall cancel all Notes surrendered for registration of transfer, exchange, payment, replacement or cancellation and shall dispose of such cancelled Notes in accordance with its customary procedures (subject to the record retention requirement of the Exchange Act) or shall return all cancelled Notes to the Issuers upon its request.  Subject to Section 2.7 hereof, the Issuers may not issue new Notes to replace Notes that have been paid or that have been delivered to the Trustee for cancellation.

59

**Section 2.12**  <u>**Defaulted Interest**</u>

Any Interest (or Liquidated Damages, if any) on any Note which is payable, but is not punctually paid or duly provided for, on any Interest Payment Date plus, to the extent lawful, any Interest payable on the defaulted Interest (and Liquidated Damages, if any) at the rate and in the manner provided in Section 4.1 hereof of the Note (herein called "*Defaulted Interest*") shall forthwith cease to be payable to the registered Holder on the relevant Interest Record Date, and such Defaulted Interest may be paid by the Issuers, at their election in each case, as provided in clause (1) or (2) below:

(1)    The Issuers may elect to make payment of any Defaulted Interest to the Persons in whose names the Notes are registered at the close of business on a Special Record Date for the payment of such Defaulted Interest, which shall be fixed in the following manner. The Issuers shall notify the Trustee and the Paying Agent in writing of the amount of Defaulted Interest proposed to be paid on each Note and the date of the proposed payment, and at the same time the Issuers shall deposit with the Paying Agent an amount of cash equal to the aggregate amount proposed to be paid in respect of such Defaulted Interest or shall make arrangements reasonably satisfactory to the Paying Agent for such deposit prior to the date of the proposed payment, such cash when deposited to be held in trust for the benefit of the Persons entitled to such Defaulted Interest as provided in this clause (1). Thereupon the Paying Agent shall fix a "Special Record Date" for the payment of such Defaulted Interest which shall be not more than 15 days and not less than 10 days prior to the date of the proposed payment and not less than 10 days after the receipt by the Paying Agent of the notice of the proposed payment. The Paying Agent shall promptly notify the Issuers and the Trustee of such Special Record Date and, in the name and at the expense of the Issuers, shall cause notice of the proposed payment of such Defaulted Interest and the Special Record Date therefor to be mailed, first-class postage prepaid, to each Holder at its address as it appears in the Note register maintained by the Registrar not less than 10 days prior to such Special Record Date. Notice of the proposed payment of such Defaulted Interest and the Special Record Date therefor having been mailed as aforesaid, such Defaulted Interest shall be paid to the persons in whose names the Notes (or their respective predecessor Notes) are registered on such Special Record Date and shall no longer be payable pursuant to the following clause (2).

(2)    The Issuers may make payment of any Defaulted Interest in any other lawful manner not inconsistent with the requirements of any securities exchange on which the Notes may be listed, and upon such notice as may be required by such exchange, if, after notice given by the Issuers to the Trustee and the Paying Agent of the proposed payment pursuant to this clause, such manner shall be deemed practicable by the Trustee and the Paying Agent.

Subject to the foregoing provisions of this Section 2.12, each Note delivered under this Indenture upon registration of transfer of or in exchange for or in lieu of any other Note shall carry the rights to Interest (and Liquidated Damages, if any) accrued and unpaid, and to accrue, which were carried by such other Note.

60

**Section 2.13    CUSIP Numbers**

The Issuers in issuing the Notes may use "CUSIP" numbers (if then generally in use), and, if so, the Trustee shall use "CUSIP" numbers in notices of redemption as a convenience to Holders; *provided* that any such notice may state that no representation is made as to the correctness of such numbers either as printed on the Notes or as contained in any notice of a redemption and that reliance may be placed only on the other identification numbers printed on the Notes, and any such redemption shall not be affected by any defect in or omission of such numbers. The Issuers shall promptly notify the Trustee in writing of any change in the "CUSIP" numbers.

**Section 2.14    Issuance of Additional Notes**

The Issuers may, subject to Section 4.7 hereof and applicable law, issue Additional Notes in an unlimited amount under this Indenture having identical terms and conditions to the Initial Notes. The Notes issued on the Issue Date and any Additional Notes subsequently issued shall be treated as a single class for all purposes under this Indenture.

Any such Additional Notes shall be issued on the same terms as the Initial Notes or Exchange Notes (except for the issue date, issue price, pre-issuance accrued Interest and first Interest Payment Date), shall constitute part of the same series of securities as the Initial Notes, shall vote together with the Initial Notes as one series on all matters with respect to the Notes and would have (i) if the Initial Notes are issued with original issue discount for United States federal income tax purposes, an "issue price," as determined on the issue date of the Additional Notes, equal to the "adjusted issue price" of the Initial Notes as determined on such issue date and (ii) if the Initial Notes are not issued with original issue discount for United States federal income tax purposes, an issue price equal or greater than the minimum issue price necessary for the Additional Notes not to be issued with original issue discount for the United States federal income tax purposes.

**ARTICLE III**
**REDEMPTION**

**Section 3.1    Notices to Trustee**

If the Issuers elect to redeem Notes pursuant to the optional redemption provisions of Section 3.7 hereof, it shall furnish to the Trustee, at least 45 days but not more than 60 days before a Redemption Date, an Officers' Certificate stating the Section of this Indenture pursuant to which such redemption is being made and setting forth (i) the Redemption Date, (ii) the principal amount of Notes to be redeemed and (iii) the redemption price.

**Section 3.2    Selection of Notes to Be Redeemed**

If less than all of the Notes are to be redeemed at any time, the Trustee shall select the Notes or portions thereof to be redeemed among the Holders of the Notes in compliance with the requirements of the principal national securities exchange, if any,

61

http://www.sec.gov/Archives/edgar/data/1326686/000104746905014761...

on which the Notes are listed or, if the Notes are not so listed, on a *pro rata* basis, by lot or in accordance with any other method the Trustee considers fair and appropriate, *provided* that Notes in denominations of $1,000 or less may not be redeemed in part.  In the event of partial redemption by lot, the particular Notes to be redeemed shall be selected, unless otherwise provided herein, not less than 30 nor more than 60 days prior to the Redemption Date by the Trustee from the outstanding Notes not previously called for redemption.

The Trustee shall promptly notify the Issuers in writing of the Notes selected for redemption and, in the case of any Note selected for partial redemption, the principal amount thereof to be redeemed.  Notes and portions of Notes selected for redemption shall be in principal amounts of $1,000 or integral multiples of $1,000, except that if all of the Notes of a Holder are to be redeemed, the entire outstanding principal amount of Notes held by such Holder, even if not an integral multiple of $1,000, shall be redeemed.  Except as provided in the preceding sentence, provisions of this Indenture that apply to Notes called for redemption also apply to portions of Notes called for redemption.

**Section 3.3**      **Notice of Redemption**

At least 30 days but not more than 60 days before a Redemption Date pursuant to Section 3.7 hereof, the Trustee shall mail or cause to be mailed, by first class mail, a notice of redemption to each Holder whose Notes are to be redeemed at its registered address.

The notice shall identify the Notes to be redeemed (including CUSIP number) and shall state:

(a)      the Redemption Date;

(b)      the redemption price;

(c)      if any Note is being redeemed in part, the portion of the principal amount of such Note to be redeemed and that, on or after the redemption date upon surrender of such Note, a new Note or Notes in principal amount equal to the unredeemed portion shall be issued upon cancellation of the original Note;

(d)      the name and address of the Paying Agent;

(e)      that Notes called for redemption must be surrendered to the Paying Agent to collect the redemption price;

(f)      that, unless the Issuers default in making such redemption payment, Interest (and Liquidated Damages, if any) on Notes or portions thereof called for redemption ceases to accrue on and after the Redemption Date;

(g)      the paragraph of the Notes and/or section of this Indenture pursuant to which the Notes called for redemption are being redeemed; and

62

10/15/2007 11:13 AM

(h)    that no representation is made as to the correctness or accuracy of the CUSIP number, if any, listed in such notice or printed on the Notes.

At the Issuers' request, the Trustee shall give the notice of redemption in the Issuers' names and at the Issuers' expense; *provided, however,* that the Issuers shall have delivered to the Trustee, at least 45 days prior to the Redemption Date (unless a shorter period shall be acceptable to the Trustee), an Officers' Certificate requesting that the Trustee give such notice and setting forth the information to be stated in such notice as provided in the preceding paragraph.

## Section 3.4    Effect of Notice of Redemption

Once notice of redemption is mailed in accordance with Section 3.3 hereof, Notes called for redemption become irrevocably due and payable on the Redemption Date at the redemption price.  A notice of redemption may not be conditional.

## Section 3.5    Deposit of Redemption Price

On the Business Day immediately prior to the Redemption Date, the Issuers shall deposit with the Trustee or with the Paying Agent immediately available funds sufficient to pay the redemption price of and accrued and unpaid Interest (and Liquidated Damages, if any) on all Notes to be redeemed on that date.  The Trustee or the Paying Agent shall promptly return to the Issuers any money deposited with the Trustee or the Paying Agent by the Issuers in excess of the amounts necessary to pay the redemption price of, and accrued and unpaid Interest (and Liquidated Damages, if any) on, all Notes to be redeemed.

If the Issuers comply with the provisions of the preceding paragraph, on and after the Redemption Date, Interest (and Liquidated Damages, if any) shall cease to accrue on the Notes or the portions of Notes called for redemption.  If a Note is redeemed on or after an Interest Record Date but on or prior to the related Interest Payment Date, then any accrued and unpaid Interest (and Liquidated Damages, if any) shall be paid to the Person in whose name such Note was registered at the close of business on such Interest Record Date.  If any Note called for redemption shall not be so paid upon surrender for redemption because of the failure of the Issuers to comply with the preceding paragraph, Interest shall be paid on the unpaid principal and premium, if any, from the Redemption Date until such principal and premium, if any is paid, and to the extent lawful on any Interest (and Liquidated Damages, if any) not paid on such unpaid principal and premium, if any, in each case at the rate provided in the Notes and in Section 4.1 hereof.

If the Redemption Date hereunder is on or after an Interest Record Date on which the Holders of record have a right to receive the corresponding Interest due and Liquidated Damages, if any, and on or before the associated Interest Payment Date, any accrued and unpaid Interest (and Liquidated Damages, if any) due on such Interest

63

Payment Date shall be paid to the Person in whose name a Note is registered at the close of business on such Interest Record Date.

**Section 3.6**          **Notes Redeemed in Part**

Upon surrender of a Note that is redeemed in part, the Issuers shall issue and, upon receipt of an Authentication Order, the Trustee shall authenticate for the Holder at the expense of the Issuers a new Note equal in principal amount to the unredeemed portion of the Note surrendered.

**Section 3.7**          **Optional Redemption**

(a)          The Issuers shall not have the right to redeem any Notes prior to April 1, 2009 (other than with the Net Cash Proceeds of a Qualified Equity Offering, as described in Section 3.7(b) hereof).

At any time on or after April 1, 2009, the Issuers may redeem the Notes for cash at the Issuers' option, in whole or in part, at any time and from time to time, upon not less than 30 days nor more than 60 days notice to each Holder of Notes, at the following redemption prices (expressed as percentages of the principal amount) if redeemed during the 12-month period commencing April 1 of the years indicated below, in each case together with accrued and unpaid Interest (and Liquidated Damages, if any) to the date of redemption of the Notes (the "*Redemption Date*"):

| Year | Percentage |
|------|-----------|
| 2009 | 104.375% |
| 2010 | 102.188% |
| 2011 and thereafter | 100.000% |

(b)          At any time on or prior to April 1, 2008, upon a Qualified Equity Offering, up to 35% of the aggregate principal amount of the Notes originally issued pursuant to this Indenture may be redeemed at the Issuers' option within 90 days of such Qualified Equity Offering, with cash received by the Issuers from the Net Cash Proceeds of such Qualified Equity Offering, at a redemption price equal to 108¾% of the principal amount thereof, together with accrued and unpaid Interest (and Liquidated Damages, if any) to the Redemption Date; *provided, however*, that immediately following such redemption not less than 65% of the aggregate principal amount of the Notes originally issued pursuant to this Indenture on the Issue Date remain outstanding.

(c)          Any redemption pursuant to this Section 3.7 shall be made pursuant to the provisions of Sections 3.1 through 3.6 hereof.

64

10/15/2007 11:13 AM

**Section 3.8**       **No Mandatory Redemption**

The
Issuers shall not be required to make any mandatory redemption payments with respect to the Notes (except for any offer to repurchase Notes that the Issuers are required to make in accordance with the provisions of Sections 4.13 and 4.14 hereof). The Notes shall not have the benefit of any sinking fund.

**Section 3.9**       **Regulatory Redemption**

If any Gaming Authority requires that a Holder or beneficial owner of Notes must be licensed, qualified or found suitable under any applicable Gaming Law and such Holder or beneficial owner fails to apply for a license, qualification or a finding of suitability within 30 days after being requested to do so by the Gaming Authority (or such lesser period that may be required by such Gaming Authority), or if such Holder or such beneficial owner is not so licensed, qualified or found suitable (a "*Disqualified Holder*"), the Issuers shall have the right, at the Issuers' option, (1) to require such Disqualified Holder or beneficial owner to dispose of such Disqualified Holder's or beneficial owner's Notes within 30 days of receipt of notice of such finding by the applicable Gaming Authority or such earlier date as may be ordered by such Gaming Authority or (2) to call for the redemption (a "*Regulatory Redemption*") of the Notes of such Disqualified Holder or beneficial owner at the principal amount thereof or, if required by such Gaming Authority, the lesser of (a) the price at which such Disqualified Holder or beneficial owner acquired the Notes, and (b) the fair market value of such Notes on the date of redemption, together with, in either case, accrued and unpaid Interest (and, if permitted by such Gaming Authority, Liquidated Damages) to the earlier of the date of redemption or such earlier date as may be required by such Gaming Authority or the date of the finding of unsuitability by such Gaming Authority, which may be less than 30 days following the notice of redemption, if so ordered by such Gaming Authority. The Issuers shall notify the Trustee in writing of any such Disqualified Holder status and any such redemption as soon as practicable and the redemption price of each Note to be redeemed.

The Holder or beneficial owner applying for a license, qualification or a finding of suitability must pay all costs of the licensure and investigation for such qualification or finding of suitability. Under this Indenture, the Issuers are not required to pay or reimburse any Holder of the Notes or beneficial owner who is required to apply for such license, qualification or finding of suitability for the costs of the licensure and investigation for such qualification or finding of suitability. Such expense will, therefore, be the obligation of such Holder or beneficial owner.

Notwithstanding any other provision of this Indenture, immediately upon the imposition of a requirement to dispose of Notes by a Gaming Authority, a Disqualified Holder shall, to the extent required by applicable Gaming Laws, have no further right (i) to exercise, directly o indirectly, through any trustee, nominee or any other person or entity, any right conferred by the Notes, or (ii) to receive any interest, dividends or any other distributions or payments with respect to the Notes or any

65

remuneration in any form with respect to the Notes from the Issuers or the Trustee, except the redemption price.

# ARTICLE IV
# COVENANTS

**Section 4.1**      **Payment of Notes**

The Issuers shall duly and promptly pay or cause to be paid the principal of, premium, if any, and Interest on the Notes on the dates and in the manner provided in the Notes. The Issuers shall pay all Liquidated Damages, if any, in the same manner on the dates and in the amounts set forth in the Registration Rights Agreement. Principal, premium, if any, and Interest (and Liquidated Damages, if any) shall be considered paid on the date due if the Paying Agent, if other than the Issuers or a subsidiary thereof, holds as of 12:00 noon Eastern time on the due date money deposited by the Issuers in immediately available funds and designated for and sufficient to pay all principal, premium, if any, and Interest (and Liquidated Damages, if any) then due.

The Issuers (a) shall pay Interest (including Accrued Bankruptcy Interest in any proceeding under any Bankruptcy Law) on overdue principal and premium, if any, at the then applicable interest rate on the Notes to the extent lawful, and (b) shall pay Interest (including Accrued Bankruptcy Interest in any proceeding under any Bankruptcy Law) on overdue installments of Interest (and Liquidated Damages, if any), without regard to any applicable grace period, at the same rate to the extent lawful.

**Section 4.2**      **Maintenance of Office or Agency**

The Issuers shall maintain in the Borough of Manhattan, The City of New York, an office or agency (which may be an office of the Trustee or an affiliate of the Trustee, Registrar or co-registrar) where Notes may be surrendered for registration of transfer or for exchange and where notices and demands to or upon the Issuers in respect of the Notes and this Indenture may be served. The Issuers shall give prompt written notice to the Trustee of the location, and any change in the location, of such office or agency. If at any time the Issuers shall fail to maintain any such required office or agency or shall fail to furnish the Trustee with the address thereof, such presentations, surrenders, notices and demands may be made or served at the designated corporate trust office of the Trustee.

The Issuers may also from time to time designate one or more other offices or agencies where the Notes may be presented or surrendered for any or all such purposes and may from time to time rescind such additional designations; *provided*, that no such designation or rescission shall in any manner relieve the Issuers of the Issuers' obligation to maintain an office or agency in the Borough of Manhattan, The City of New York. The Issuers shall give prompt written notice to the Trustee of any such designation or rescission and of any change in the location of any such other office or agency.

The Issuers hereby designate the Corporate Trust Office of the Trustee as one such office or agency of the Issuers in accordance with Section 2.3 hereof.

66

**Section 4.3**        **Commission Reports and Reports to Holders**

(a)        Whether or not the Issuers are subject to the reporting requirements of Section 13 or 15(d) of the Exchange Act, so long as any Notes are outstanding, the Issuers shall deliver to the Trustee and to each Holder and to prospective purchasers of Notes identified to the Issuers by the Initial Purchaser, within 5 days after the Issuers are or would have been (if it were subject to such reporting obligations) required to file such with the Commission, (i) annual and quarterly financial statements substantially equivalent to financial statements that would have been required to be contained in a filing with the Commission on Forms 10-K and 10-Q if the Issuers were required to file such Forms, including in each case, Management's Discussion and Analysis of Financial Condition and Results of Operations which would be so required, any reports required by Section 404 of the Sarbanes-Oxley Act of 2002 and including, with respect to annual information only, a report thereon by the Issuers' certified independent public accountants as would be so required, and (ii) all information that would be required to be contained in a filing with the Commission on Form 8-K if the Issuers were required to file such report.

(b)        From and after the time the Issuers file a registration statement with the Commission with respect to the Notes, the Issuers will file with the Commission the annual, quarterly and other reports which the Issuers are required to file with the Commission at such time as are required to be filed.

(c)        The Issuers' reporting obligations with respect to clauses (i) and (ii) of Section 4.3(a) shall be satisfied in the event the Issuers file such reports with the Commission on EDGAR and deliver a copy of such reports to the Trustee, unless the Commission will not accept such filings.

**Section 4.4**        **Compliance Certificate**

(a)        The Issuers shall deliver to the Trustee, within 120 days after the end of each fiscal year, an Officers' Certificate stating that a review of the activities of the Issuers and the Subsidiaries during the preceding fiscal year has been made under the supervision of the signing Officers with a view to determining whether the Issuers and the Subsidiaries have kept, observed, performed and fulfilled their obligations under this Indenture, and further stating, as to each such Officer signing such certificate, that to his or her knowledge the Issuers and the Subsidiaries are not in default in the performance or observance of any of the terms, provisions and conditions of this Indenture (or, if a Default or Event of Default shall have occurred and be continuing, describing all such Defaults or Events of Default of which he or she may have knowledge and what action the Issuers are taking or propose to take with respect thereto) and that to his or her knowledge no event has occurred and remains in existence by reason of which payments on account of the principal of or premium, if any, or Interest (or Liquidated Damages, if any) on the Notes is prohibited or if such event has occurred, a description of the event and what action the Issuers are taking or propose to take with respect thereto.  The Issuers shall provide the Trustee with timely written notice of any change in any of the Issuer's fiscal year ends, each of which is currently December 31.

67

(b)      The Issuers

shall, so long as any of the Notes are outstanding, deliver to the Trustee, within five Business Days of any Officer becoming aware of any Default or Event of Default, an Officers' Certificate specifying such Default or Event of Default and what action the Issuers are taking or propose to take with respect thereto.

**Section 4.5      Taxes**

The

Issuers shall pay, and shall cause each of the Subsidiaries to pay, prior to delinquency, all material taxes, assessments, and governmental levies except such as are contested in good faith and by appropriate proceedings or where the failure to effect such payment would not have a material adverse effect on the ability of the Issuers and the Guarantors to satisfy their obligations under the Notes, the Guarantees, this Indenture, the Registration Rights Agreement, the Intercreditor Agreement and the Collateral Agreements.

**Section 4.6      Stay, Extension and Usury Laws**

The

Issuers covenant (to the extent that they may lawfully do so) that they shall not at any time insist upon, plead, or in any manner whatsoever claim or take the benefit or advantage of, any stay, extension or usury law wherever enacted, now or at any time hereafter in force, that may affect the covenants or the performance of this Indenture. The Issuers (to the extent that they may lawfully do so) hereby expressly waive all benefit or advantage of any such law, and covenant that they shall not, by resort to any such law, hinder, delay or impede the execution of any power herein granted to the Trustee, but shall suffer and permit the execution of every such power as though no such law has been enacted.

**Section 4.7      Limitation on Incurrence of Additional Indebtedness and Disqualified Capital Stock**

(a)      Except as set forth in this Section 4.7, the Issuers shall not and the Guarantors shall not, and neither the Issuers nor the Guarantors shall permit any of the Subsidiaries to, directly or indirectly, create, issue, assume, guarantee, incur, become directly or indirectly liable with respect to (including as a result of an Acquisition), or otherwise become responsible for, contingently or otherwise (individually and collectively, to "*incur*" or, as appropriate, an "*incurrence*"), any Indebtedness (including Disqualified Capital Stock and Acquired Indebtedness), other than Permitted Indebtedness.

Notwithstanding the foregoing, if:

(1)

no Default or Event of Default shall have occurred and be continuing at the time of, or would occur after giving effect on a *pro forma* basis to, such incurrence of such Indebtedness,

(2)

on the date of such incurrence (the "*Incurrence Date*"), the Issuers' Consolidated Coverage Ratio for the Reference Period immediately preceding the Incurrence Date, after giving effect on a *pro forma* basis to

68

such incurrence of such Indebtedness and, to the extent set forth in the definition of Consolidated Coverage Ratio, the use of proceeds thereof, would be at least 2.0 to 1.0, and

(3)        the Incurrence Date is on or after the first day of the second full fiscal quarter commencing after the Re-opening has occurred,

then the Issuers and the Subsidiaries may incur such Indebtedness (including Disqualified Capital Stock and Acquired Indebtedness) (the preceding clauses (1) through (3) are referred to as the "*Debt Incurrence Ratio Test*").

(b)        The limitations of Section 4.7(a) hereof shall not prohibit the incurrence by the Issuers or any Guarantor of Indebtedness pursuant to the Credit Agreement in an aggregate principal amount incurred and outstanding at any time (plus any Permitted Refinancing Indebtedness incurred to retire, defease, refinance, replace or refund such Indebtedness) of up to $15,000,000 (plus related interest, fees, indemnities, costs and expenses), minus the amount of any such Indebtedness (1) retired with the Net Cash Proceeds from any Asset Sale or Event of Loss applied to permanently reduce the outstanding amounts or the commitments with respect to such Indebtedness pursuant to Section 4.13 hereof or (2) assumed by a transferee in an Asset Sale (such amount of Indebtedness pursuant to the Credit Agreement permitted to be incurred and outstanding pursuant to this Section 4.7(b), the "*Credit Facility Basket*").

(c)        Indebtedness of any Person which is outstanding at the time such Person becomes a Subsidiary (including upon designation of any Unrestricted Subsidiary as a Subsidiary) or is merged with or into or consolidated with any of the Issuers or Subsidiaries shall be deemed to have been incurred at the time such Person becomes or is designated as a Subsidiary or is merged with or into or consolidated with any of the Issuers or Subsidiaries, as applicable.

(d)        Notwithstanding any other provision of this Section 4.7, but only to avoid duplication, a guarantee by the Issuers or a Guarantor of the Indebtedness of any of the Issuers or Guarantors incurred in accordance with the terms of this Indenture issued at the time such Indebtedness was incurred or if later at the time the guarantor thereof became a Guarantor shall not constitute a separate incurrence, or amount outstanding, of Indebtedness.

(e)        Upon each incurrence of Indebtedness, (i) the Issuers may designate pursuant to which provision of this Section 4.7 such Indebtedness is being incurred, (ii) the Issuers may subdivide an amount of Indebtedness and designate more than one provision pursuant to which such amount of Indebtedness is being incurred and (iii) such Indebtedness shall not be deemed to have been incurred or outstanding under any other provision of this Section 4.7, except that all Indebtedness initially outstanding under the Notes, the Guarantees and this Indenture shall be deemed to have been incurred pursuant to clause (a) of the definition of Permitted Indebtedness.

69

10/15/2007 11:13 AM

**Section 4.8**        **Limitation on Liens Securing Indebtedness**

       The Issuers shall not and the Guarantors shall not, and neither the Issuers nor the Guarantors shall permit any of the Subsidiaries to, create, incur, assume or suffer to exist any Lien of any kind, other than Permitted Liens, upon any of the Issuers' or the Guarantors' or the Subsidiaries' respective assets now owned or acquired on or after the Issue Date or upon any income or profits therefrom securing any of the Issuers' Indebtedness or any Indebtedness of any Guarantor.

**Section 4.9**        **Limitation on Restricted Payments**

      (a)      The Issuers shall not and the Guarantors shall not, and neither the Issuers nor the Guarantors shall permit any of the Subsidiaries to, directly or indirectly, make any Restricted Payment unless, after giving effect on a *pro forma* basis to such Restricted Payment:

    (1)      no Default or Event of Default shall have occurred and be continuing,

    (2)      the Issuers are permitted to incur at least $1.00 of additional Indebtedness pursuant to the Debt Incurrence Ratio Test,

    (3)      the Re-opening and the Operator Licensing Event each shall have occurred, and

    (4)      the aggregate amount of all Restricted Payments made by the Issuers and the Subsidiaries, including after giving effect to such proposed Restricted Payment, on and after the Issue Date, would not exceed, without duplication, the sum of:

      (A)      50% of the Issuers' aggregate Consolidated Net Income for the period (taken as one accounting period), commencing on the first day of the first full fiscal quarter commencing after the Re-opening has occurred, to and including the last day of the fiscal quarter ended immediately prior to the date of each such calculation for which the Issuers' consolidated financial statements are required to be delivered to the Trustee or, if sooner, filed with the Commission (or, in the event Consolidated Net Income for such period is a deficit, then minus 100% of such deficit), plus

      (B)      the aggregate Net Cash Proceeds received by the Issuers from the sale of the Issuers' Qualified Capital Stock after the Issue Date (other than (i) to one of the Subsidiaries, (ii) to the extent applied in connection with a Qualified Exchange or, to avoid duplication, otherwise given credit for in any provision of this clause (4), (iii) used as consideration to make a Permitted Investment or (iv) issued upon the conversion or exchange of any Indebtedness of the Issuers or the Subsidiaries convertible or exchangeable for the

Issuers' Qualified Capital Stock as described in paragraph (C) below), plus

(C)

the amount by which Indebtedness of the Issuers or the Subsidiaries is reduced on the Issuers' balance sheet upon the conversion or exchange (other than by one of the Subsidiaries) subsequent to the Issue Date of any Indebtedness of the Issuers or the Subsidiaries issued after the Issue Date and convertible or exchangeable for the Issuers' Qualified Capital Stock (less the amount of any cash, or the fair market value of any other property, distributed by the Issuers or any of the Subsidiaries upon such conversion or exchange), plus

(D)

except in each case, in order to avoid duplication, to the extent any such payment or proceeds have been included in the calculation of Consolidated Net Income or otherwise given credit for in any other provision of this clause (4), an amount equal to the net reduction in Investments (other than returns of or from Permitted Investments) in any Person (including an Unrestricted Subsidiary) resulting from:

cash distributions on or cash repayments of any Investments, including payments of interest on Indebtedness, dividends, repayments of loans or advances, or other distributions or other transfers of assets, in each case to the Issuers or any Subsidiary,

the Net Cash Proceeds from the sale of any such Investment, or

if such Person is an Unrestricted Subsidiary, the redesignation of such Person as a Subsidiary,

valued in each case as provided in the definition of "Investments," and not to exceed, in each case, the amount of Investments previously made (and that were treated as Restricted Payments) by the Issuers or any Subsidiary in such Person, including, if applicable, such Unrestricted Subsidiary, less the cost of disposition, plus

(E)

$1,500,000 per year (beginning on the first anniversary of the Issue Date) with any unused amounts cumulated until used.

(b)    Section 4.9(a) hereof, however, shall not prohibit:

(1)

so long as clause (1) of Section 4.9(a) hereof is satisfied, repurchases, redemptions or other retirements or acquisitions of Capital Stock from the Issuers' employees or directors (or their heirs or estates) or employees or directors (or their heirs or estates) of the Subsidiaries upon the death, disability or termination of employment in an aggregate amount pursuant to this clause (1) to all employees or directors (or their heirs or estates) not to

71

exceed (A) $250,000 per fiscal year on and after the Issue Date or (B) $1,000,000 in the aggregate,

(2)    any dividend, distribution or other payments by any of the Subsidiaries on its Equity Interests that is paid *pro rata* to all holders of such Equity Interests,

(3)    a Qualified Exchange,

(4)

the payment of any dividend on Qualified Capital Stock within 60 days after the date of its declaration if such dividend could have been made on the date of such declaration in compliance with the foregoing provisions,

(5)

the redemption and repurchase of any Equity Interests or Indebtedness of the Issuers or any of the Subsidiaries to the extent required by any Gaming Authority,

(6)    so long as each of clauses (1) and (3) of Section 4.9(a) are satisfied,

    (i)    payments under the Operating Agreement (including without limitation affiliate, management and royalty fees) ("*Management/Royalty Payments*") not to exceed, for any fiscal year, the sum of (x) 2.0% of Net Revenue and (y) 3.0% of the Consolidated EBITDA of the Issuers for the immediately preceding fiscal year, and

    (ii)    payment of the EW Preferred Return,

*provided*, *however*, that any payments may be made pursuant to this clause (6) only if the Issuers' Consolidated Coverage Ratio is, after giving *pro forma*
effect to any such payments as if paid at the beginning of such fiscal year period, at least 1.5 to 1.0 (for purposes of this clause (6), Consolidated EBITDA (including as used in Consolidated Coverage Ratio) shall give effect to any Management/Royalty Payments and any payments of EW Preferred Return, in either case, actually paid in such fiscal year (whether or not previously accrued), but not to any such payments accrued but not yet paid),

(7)

with respect to each tax year or portion thereof that an Issuer qualifies as a Flow Through Entity and so long as clause (1) above is satisfied, the payment of Permitted Tax Distributions (whether paid in such tax year or portion thereof, or any subsequent tax year) in respect of such Issuer; *provided*, that (A) prior to the first payment of Permitted Tax Distributions during any particular calendar year such Issuer provides an Officers' Certificate and an Opinion of Counsel reasonably acceptable to the Trustee to the effect that such Issuer and each other Flow Through Entity in respect of which such distributions are being made qualify as Flow Through Entities for United States federal income tax purposes and for the states in respect of which such distributions are being made for such tax

72

                                      

year or portion thereof, (B) at the time of such distribution, the most recent audited financial statements of such Issuer for periods including such tax year or portion thereof provided to the Trustee pursuant to Section 4.3 hereof provide that such Issuer and each subsidiary of such Issuer in respect of which such distributions are being made was treated as a Flow Through Entity for the period of such financial statements and (C) in the case of the portion, if any, of any Permitted Tax Distribution that is proposed to be distributed for a particular taxable period or portion thereof, which portion of such Permitted Tax Distribution is attributable to a Flow Through Entity that is not a Subsidiary, such portion of such proposed Permitted Tax Distribution shall be limited to the Excess Cash Distribution Amount for Taxes, and

(8)      the following payments by the Company to E&W or EW Common: (i) the approximately $1,300,000 Financing Difference Payment and (ii) the Working Capital Payment.

(c)      The full amount of any Restricted Payment made pursuant to the foregoing clauses (1), (2), (4) and (5) and, to the extent not reducing Consolidated Net Income, clause (6) (but not pursuant to clause (3), (6) (to the extent reducing Consolidated Net Income), (7) or (8)) of the immediately preceding sentence, however, shall be counted as Restricted Payments made for purposes of the calculation of the aggregate amount of Restricted Payments available to be made referred to in clause (4) of Section 4.9(a).

(d)      For purposes of this Section 4.9, the amount of any Restricted Payment made or returned, if other than in cash, shall be the fair market value thereof, as determined in the reasonable good faith judgment of the applicable Issuer's Board of Directors, unless stated otherwise, at the time made or returned, as applicable.

(e)      For the avoidance of doubt, any amendment or supplement to or modification of any of the License Agreements or Lease-Related Agreements that could increase the amount of Restricted Payments payable thereunder shall be deemed adverse to Noteholders.

**Section 4.10      <u>Limitation on Dividend and Other Payment Restrictions Affecting Subsidiaries</u>**

The Issuers shall not and the Guarantors shall not, and neither the Issuers nor the Guarantors shall permit any of the Subsidiaries to, directly or indirectly, incur or suffer to exist any consensual restriction on the ability of any of the Subsidiaries (i) to pay dividends or make other distributions to or on behalf of, (ii) to pay any obligation to or on behalf of, (iii) to otherwise transfer assets or property to or on behalf of, or (iv) to make or pay loans or advances to or on behalf of, the Issuers or any of the Subsidiaries, except:

(1)      restrictions imposed by the Notes, the Guarantees or this Indenture or by the Issuers' other Indebtedness (which may also be guaranteed by the

73

Guarantors) ranking *pari passu* with the Notes or the Guarantees, as applicable; *provided*, that such restrictions are no more restrictive in any material respect than those imposed by this Indenture and the Notes,

(2)    restrictions imposed by applicable law,

(3)    existing restrictions under Existing Indebtedness,

(4)    restrictions under (i) any Acquired Indebtedness not incurred in violation of this Indenture or (ii) any agreement relating to any business, property or asset (including any Equity Interest) acquired by the Issuers or any of the Subsidiaries, which restrictions in the case of both (i) and (ii) existed at the time of acquisition, were not put in place in connection with or in anticipation of such acquisition and are not applicable to any Person, other than the Person acquired, or to any property, asset or business, other than the property, assets and business so acquired,

(5)    restrictions imposed by Indebtedness incurred under the Credit Agreement in accordance with this Indenture; *provided*, that such restrictions are no more restrictive in any material respect than those imposed by the Credit Agreement as of the Issue Date,

(6)    restrictions with respect solely to any of the Subsidiaries imposed pursuant to a binding agreement which has been entered into for the sale or disposition of all of the Equity Interests or assets of such Subsidiary; *provided*, that such restrictions apply solely to the Equity Interests or assets of such Subsidiary which are being sold,

(7)    restrictions on transfer contained in FF&E Financing, Purchase Money Indebtedness or Capitalized Lease Obligations permitted to be incurred pursuant to Section 4.7 hereof; *provided*, that such restrictions relate only to the transfer of the property acquired with the proceeds of such Indebtedness, and

(8)    in connection with and pursuant to Permitted Refinancing Indebtedness, the replacement of restrictions imposed pursuant to clauses (1), (3), (4) or (7) of this Section 4.10 or this clause (8) that are not more restrictive in any material respect as determined by the Board of Directors of the applicable Issuer in its reasonable good faith judgment than those being replaced and do not apply to any other Person or assets than those that would have been covered by the restrictions in the Indebtedness so refinanced.

Notwithstanding the foregoing, (a) there may exist customary provisions restricting subletting or assignment of any lease entered into in the ordinary course of business, consistent with industry practice and (b) any asset subject to a Lien which is not prohibited to exist with respect to such asset pursuant to the terms of this Indenture may be

74

subject to customary restrictions on the transfer or disposition thereof pursuant to such Lien.

**Section 4.11**      **Limitation on Impairment of Security Interests**

Except as permitted herein, the Intercreditor Agreement and the Collateral Agreements, the Issuers shall not and the Guarantors shall not, and neither the Issuers nor the Guarantors shall permit the Subsidiaries to, take or omit to take any action that would have the result of materially adversely affecting or impairing the Lien on the Collateral in favor of the Trustee for the benefit of the Holders of the Notes.

**Section 4.12**      **Limitation on Transactions with Affiliates**

The Issuers and the Guarantors shall not, and neither the Issuers nor the Guarantors shall permit any of the Subsidiaries to, on or after the Issue Date, directly or indirectly, sell, lease, transfer or otherwise dispose of any of the Issuers' or their properties or assets to, or purchase any property or assets from, or enter into or suffer to exist any contract, agreement, understanding, loan, advance, guarantee, arrangement or transaction with, or for the benefit of, any Affiliate (each of the foregoing, an "*Affiliate Transaction*"), or any series of related Affiliate Transactions (other than Exempted Affiliate Transactions):

(1)

unless it is determined that the terms of such Affiliate Transaction(s) are fair and reasonable to the Issuers, and no less favorable to the Issuers than could have been obtained in an arm's length transaction with a non-Affiliate,

(2)

if involving consideration to either party of $1,000,000 or more, unless such Affiliate Transaction(s) has been approved by a majority of the members of the Board of Directors of the applicable Issuer that are disinterested in such transaction (if there are any directors who are so disinterested or, if none, a disinterested committee appointed by the Board of Directors of the applicable Issuer for such purpose), and

(3)

if involving consideration to either party of $2,500,000 or more (or $1,000,000 or more if no members of the Board of Directors of the applicable Issuer are disinterested in such transaction and no disinterested committee is appointed as provided in clause (2) above) unless, in addition to complying with clauses (1) and (2) above, the Issuers, prior to the consummation thereof, obtain a written favorable opinion as to the fairness of such transaction(s) to the Issuers from a financial point of view from an independent investment banking firm of national reputation in the United States or, if pertaining to a matter for which such investment banking firms do not customarily render such opinions, an appraisal or valuation firm of national reputation in the United States.

75

**Section 4.13**     **Limitation on Sale Of Assets And Subsidiary Stock**

     (a)     The Issuers shall not and the Guarantors shall not, and neither the Issuers nor the Guarantors shall permit any of the Subsidiaries to, in one or a series of related transactions, convey, sell, transfer, assign or otherwise dispose of, directly or indirectly, any of the Issuers' or their property, business or assets, including by merger or consolidation (in the case of a Guarantor or one of the Subsidiaries), and including any sale or other transfer or issuance of any Equity Interests of any of the Subsidiaries, whether by the Issuers or any of the Subsidiaries or through the issuance, sale or transfer of Equity Interests by any of the Subsidiaries and including any sale-leaseback transaction (any of the foregoing, an "*Asset Sale*") unless:

    (1)

       at least 75% of the total consideration for such Asset Sale or series of related Asset Sales consists of cash or Cash Equivalents, and

    (2)

       the Board of Directors of the applicable Issuer determines in reasonable good faith that such Issuer or such Subsidiary will receive, as applicable, fair market value for such Asset Sale.

    For purposes of clause (1) of this Section 4.13(a), the following shall be deemed to constitute cash or Cash Equivalents: (a) the amount of any Indebtedness or other liabilities (other than Indebtedness or liabilities that are by their terms subordinated to the Notes and the Guarantees) of the Issuers or such Subsidiary that are assumed by the transferee of any such assets so long as the documents governing such liabilities provide that there is no further recourse to the Issuers or any of the Subsidiaries with respect to such liabilities and (b) fair market value of any marketable securities, currencies, notes or other obligations received by the Issuers or any such Subsidiary in exchange for any such assets that are converted into cash or Cash Equivalents within 30 days after the consummation of such Asset Sale, *provided*, that such cash and Cash Equivalents shall be treated as Net Cash Proceeds attributable to the original Asset Sale for which such property was received.

     (b)     Within 360 days following such Asset Sale, the Net Cash Proceeds therefrom (the "*Asset Sale Amount*"), if used, shall be:

    (1)

       (i) used to retire Purchase Money Indebtedness secured by the asset which was the subject of the Asset Sale, or (ii) used to retire and permanently reduce Indebtedness incurred under the Credit Agreement; *provided*, that in the case of a revolver or similar arrangement that makes credit available, such commitment is permanently reduced by such amount; or

    (2)

       invested in assets and property (other than notes, bonds, obligations and securities, except in connection with the acquisition of a Person in a Related Business which immediately following such acquisition becomes a Guarantor) which in the reasonable good faith judgment of the applicable Issuer's Board of Directors will immediately constitute or be a part of a Related Business of the Issuers or such Guarantor (if it continues to be a

76

Guarantor) immediately following such transaction (such assets or property, the "*Related Business Assets*"); or

(3)        any combination of (1) or (2).

(c)        All Net Cash Proceeds from an Event of Loss shall be used as follows: (x) first, to the extent not prohibited by the Credit Agreement, the Issuers shall use such Net Cash Proceeds to the extent necessary to rebuild, repair, replace or restore the assets subject to such Event of Loss with comparable assets; and (y) then, to the extent any Net Cash Proceeds from an Event of Loss are not used as described in the preceding clause (x) all such remaining Net Cash Proceeds shall be reinvested or used as provided in clause (1), (2) or (3) of Section 4.13(b) hereof.

(d)        The accumulated Net Cash Proceeds from Asset Sales not applied as set forth in clause (1), (2) or (3) of Section 4.13(b) hereof and the accumulated Net Cash Proceeds from any Event of Loss not applied as set forth in clause (x) or (y) of Section 4.13(c) hereof shall constitute "*Excess Proceeds*." Pending the final application of any Net Cash Proceeds, the Issuers may temporarily reduce revolving credit borrowings or otherwise invest or use for general corporate purposes the Net Cash Proceeds in any manner that is not prohibited by this Indenture; *provided, however*, that the Issuers may not use the Net Cash Proceeds (x) to make Restricted Payments other than Restricted Payments that are solely Restricted Investments or (y) to make Permitted Investments pursuant to clause (a) of the definition thereof.

(e)        When the Excess Proceeds equal or exceed $5,000,000, the Issuers shall offer to repurchase the Notes, together with any other Indebtedness ranking on a parity with the Notes and with similar provisions requiring the Issuers to make an offer to purchase such Indebtedness with the proceeds from such Asset Sale pursuant to a cash offer (subject only to conditions required by applicable law, if any) (the "*Asset Sale Offer*") at a purchase price of 100% of the principal amount (or accreted value in the case of Indebtedness issued with an original issue discount) (the "*Asset Sale Offer Price*") together with accrued and unpaid interest (and Liquidated Damages, if any) to the Asset Sale Purchase Date. In order to effect the Asset Sale Offer, the Issuers shall promptly after expiration of the 360-day period following the Asset Sale that produced such Excess Proceeds mail to each Holder of Notes notice of the Asset Sale Offer (the "*Asset Sale Notice*"), offering to purchase the Notes on a date (the "*Asset Sale Purchase Date*") that is no earlier than 30 days and no later than 60 days after the date that the Asset Sale Notice is mailed.

On the Asset Sale Purchase Date, the Issuers shall apply an amount equal to the Excess Proceeds (the "*Asset Sale Offer Amount*") plus an amount equal to accrued and unpaid interest (and Liquidated Damages, if any) to the purchase of all Indebtedness properly tendered in accordance with the provisions of this Section 4.13 (on a *pro rata* basis if the Asset Sale Offer Amount is insufficient to purchase all Indebtedness so tendered) at the Asset Sale Offer Price together with accrued and unpaid interest (and Liquidated Damages, if any) to the Asset Sale Purchase Date. To the extent that the aggregate amount of Notes and such other *pari passu* Indebtedness tendered pursuant to

77

an Asset Sale Offer is less than the Asset Sale Offer Amount, the Issuers may use any remaining Net Cash Proceeds as otherwise permitted by this Indenture.  Following the consummation of each Asset Sale Offer in accordance with the provisions of this Section 4.13, the Excess Proceeds amount shall be reset to zero.

      (f)      Notwithstanding, and without complying with, the provisions of this Section 4.13:

(1)

the Issuers and the Subsidiaries may convey, sell, transfer, assign or otherwise dispose of assets with a fair market value (or that result in gross proceeds) of less than $1,000,000, until the aggregate fair market value and gross proceeds of the transactions excluded from the definition of Asset Sale pursuant to this clause (1) exceed $5,000,000;

(2)

the Issuers and the Subsidiaries may, in the ordinary course of business, (x) exchange gaming equipment or other FF&E for replacement items, (y) convey, sell, transfer, assign or otherwise dispose of inventory and other assets acquired and held for resale in the ordinary course of business and (z) liquidate Cash Equivalents;

(3)

the Issuers and the Subsidiaries may convey, sell, transfer, assign or otherwise dispose of assets pursuant to and in accordance with Article V hereof;

(4)

the Issuers and the Subsidiaries may sell or dispose of damaged, worn out or other obsolete personal property in the ordinary course of business so long as such property is no longer necessary for the proper conduct of the Issuers' business or the business of such Subsidiary, as applicable;

(5)

the Issuers and the Subsidiaries may convey, sell, transfer, assign or otherwise dispose of assets to the Issuers or any of the Guarantors;

(6)

the Issuers and the Subsidiaries may settle, release or surrender tort or other litigation claims in the ordinary course of business or grant Liens not prohibited by this Indenture;

(7)

the Issuers and the Subsidiaries may exchange any property or assets for Related Business Assets (as defined in Section 4.13(b)(2) hereof);

(8)

the Issuers and the Subsidiaries may make Permitted Investments pursuant to clause (d) of the definition thereof and Restricted Investments that are not prohibited by Section 4.9 hereof; and

(9)      the Company may make the Parcel 2 Contribution.

      (g)      Any Asset Sale Offer shall be made in compliance with all applicable laws, rules, and regulations, including, if applicable, Regulation 14E of the

78

Exchange Act and the rules and regulations thereunder and all other applicable federal and state securities laws. To the extent that the provisions of any securities laws or regulations conflict with the provisions of this Section 4.13, the Issuers' compliance or the compliance of any of the Subsidiaries with such laws and regulations shall not in and of itself cause a breach of the Issuers' obligations under this Section 4.13.

(h)    If the Asset Sale Purchase Date is on or after an Interest Record Date and on or before the associated Interest Payment Date, any accrued and unpaid Interest (and Liquidated Damages, if any) due on such Interest Payment Date shall be paid to the Person in whose name a Note is registered at the close of business on such Interest Record Date.

(i)    The Trustee shall be entitled to receive in connection with an Asset Sale such documents, if any, required by the TIA.

### Section 4.14    Repurchase of Notes at the Option of the Holder Upon a Change of Control

(a)    In the event that a Change of Control has occurred, each Holder of Notes shall have the right, at such Holder's option, pursuant to an offer (subject only to conditions required by applicable law, if any) by the Issuers (the "*Change of Control Offer*"), to require the Issuers to repurchase all or any part of such Holder's Notes (*provided*, that the principal amount of such Notes must be $1,000 or an integral multiple thereof) at a cash price equal to 101% of the principal amount thereof (the "*Change of Control Purchase Price*"), together with accrued and unpaid Interest (and Liquidated Damages, if any) to the Change of Control Purchase Date (as defined below).

In order to effect the Change of Control Offer, the Issuers shall, not later than the 30th day after the occurrence of a Change of Control, mail to each Holder of Notes notice of the Change of Control Offer (the "*Change of Control Notice*"), describing the transaction or transactions that constitute the Change of Control and offering to repurchase the Notes on a date (the "*Change of Control Purchase Date*") that is no earlier than 30 days and no later than 60 days after the date that the Change of Control Notice is mailed, pursuant to the procedures required by this Indenture and described in the Change of Control Notice. On the Change of Control Purchase Date, to the extent lawful, the Issuers promptly shall purchase all Notes properly tendered in response to the Change of Control Offer.

As used herein, a "*Change of Control*" means any of the following:

(1)    prior to consummation of an Initial Public Offering, the Existing Stockholders, in the aggregate, shall (A) cease to be entitled, by beneficial ownership of the Voting Equity Interests of the Issuers, contract or otherwise, to elect or designate for election a majority of the Board of Directors of each of the Issuers or (B) cease to beneficially own more than 50% of the aggregate voting power of the Voting Equity Interests of each of the Issuers, in each case, whether as a result of issuance of the securities

79

of one or more Issuers, any merger, consolidation, liquidation or dissolution of one or more Issuers, any direct or indirect transfer of securities by the Existing Stockholders or otherwise;

(2)      after the consummation of an Initial Public Offering, (A) any "person" (including any group that is deemed to be a "person") (other than the Existing Stockholders or any group consisting solely of Existing Stockholders) is or becomes the beneficial owner, directly or indirectly, of more than 35% of the aggregate voting power of the Voting Equity Interests of any of the Issuers, and (B) one or more of the Existing Stockholders or a group consisting solely of Existing Stockholders beneficially own, directly or indirectly, in the aggregate, a lesser percentage of the aggregate voting power of the Voting Equity Interests of such Issuer than such other person and do not have the right or ability by voting power, contract or otherwise to elect or designate for election a majority of the Board of Directors of such Issuer;

(3)      any of the Issuers adopts a plan of liquidation;

(4)      the Continuing Directors cease for any reason to constitute a majority of the Board of Directors then in office of any of the Issuers; or

(5)      any merger or consolidation of any of the Issuers with or into another person or the merger of another person with or into any of the Issuers, or the sale of all or substantially all of the assets (determined on a consolidated basis) of the Issuers to another person (other than, in all such cases, one or more of the Existing Stockholders or any group consisting solely of Existing Stockholders) other than, with respect to this clause (5), a transaction in which the holders of securities that represented 100% of the aggregate voting power of such Issuer's Voting Equity Interests immediately prior to such transaction own directly or indirectly at least a majority of the aggregate voting power of the Voting Equity Interests of the surviving person in such merger or consolidation or the transferee of such assets immediately after such transaction or have the right or ability by voting power, contract or otherwise to elect or designate for election a majority of the Board of Directors of such transferee or surviving person; or

(6)      any person, other than the Issuers, the Guarantors or E&W, becomes the operator of the Casino.

As used in this Section 4.14, "*Person*" (including any group that is deemed to be a "*Person*") has the meaning given by Section 13(d) of the Exchange Act, whether or not applicable.

(b)      On or before the Change of Control Purchase Date, the Issuers shall:

80

(1)        accept for payment Notes or portions thereof properly tendered pursuant to the Change of Control Offer,

(2)        deposit with the Paying Agent cash sufficient to pay the Change of Control Purchase Price, together with accrued and unpaid Interest (and Liquidated Damages, if any) to the Change of Control Purchase Date of all Notes so tendered, and

(3)        deliver to the Trustee the Notes so accepted together with an Officers' Certificate listing the Notes or portions thereof being purchased by the Issuers.

The Paying Agent promptly shall pay each Holder of Notes so accepted an amount equal to the Change of Control Purchase Price together with accrued and unpaid Interest (and Liquidated Damages, if any) to the Change of Control Purchase Date, and the Trustee promptly shall authenticate and deliver to such Holders a new Note equal in principal amount to any unpurchased portion of the Note surrendered.  Any Notes not so accepted shall be delivered promptly by the Issuers to the Holder thereof.  The Issuers shall publicly announce the results of the Change of Control Offer on or as soon as practicable after the Change of Control Purchase Date.

The provisions described above that require the Issuers to make a Change of Control Offer following a Change of Control shall be applicable regardless of whether or not any other provisions of this Indenture are applicable.

(c)        The Issuers shall not be required to make a Change of Control Offer upon a Change of Control if a third party makes the Change of Control Offer in the manner, at the times and otherwise in compliance with the requirements set forth in this Indenture applicable to a Change of Control Offer made by the Issuers and purchases all Notes validly tendered and not withdrawn under such Change of Control Offer.

(d)        Any Change of Control Offer shall be made in compliance with all applicable laws, rules and regulations, including, if applicable, Regulation 14E under the Exchange Act and the rules thereunder and all other applicable federal and state securities laws.  To the extent that the provisions of any securities laws or regulations conflict with the provisions of this Section 4.14, the compliance by any of the Issuers or the Guarantors with such laws and regulations shall not in and of itself cause a breach of the Issuers' or the Guarantors' obligations under this Section 4.14.

(e)        If the Change of Control Purchase Date is on or after an Interest Record Date and on or before the associated Interest Payment Date, any accrued and unpaid Interest (and Liquidated Damages, if any) due on such Interest Payment Date shall be paid to the Person in whose name a Note is registered at the close of business on such Interest Record Date.

81

**Section 4.15**     **Subsidiary Guarantors**

All of the Issuers' future Subsidiaries (other than Excluded Foreign Subsidiaries) shall (i) jointly and severally guarantee all principal of and all premium, if any, and Interest (and Liquidated Damages, if any) on the Notes on a senior secured basis by executing a Guarantee and a supplemental indenture in accordance with Article XI of this Indenture, (ii) grant a security interest in and/or pledge the Collateral owned by such Subsidiary to secure such Obligations on the terms set forth in the Collateral Agreements and in Sections 4.21 and Article X of this Indenture and (iii) deliver to the Trustee the documents and Opinion of Counsel required by Section 11.4 hereof.

Notwithstanding anything in this Indenture to the contrary, (i) if any of the Excluded Foreign Subsidiaries that is not a Guarantor guarantees any Indebtedness of any of the Issuers or any of the Guarantors, or (ii) any of the Issuers or any of the Guarantors, individually or collectively, pledges more than 65% of the Voting Equity Interests of a Foreign Subsidiary that is not a Guarantor to a lender to secure the Indebtedness of any of the Issuers or any of the Guarantors, then in the cases described in each of clauses (i) and (ii), such Foreign Subsidiary must become a Guarantor. As of the Issue Date, the Issuers have no Subsidiaries.

**Section 4.16**     **Limitation on Status as Investment Company**

The Issuers, the Guarantors and the Subsidiaries are prohibited from being required to register as an "investment company" (as that term is defined in the Investment Company Act of 1940, as amended (the "*Investment Company Act*")), or from otherwise becoming subject to regulation under the Investment Company Act.

**Section 4.17**     **Maintenance of Properties and Insurance**

The Issuers and the Guarantors shall cause all material properties used or useful to the conduct of their business and the business of each of the Subsidiaries to be maintained and kept in good condition, repair and working order (reasonable wear and tear excepted) in all material respects and supplied with all necessary equipment and shall cause to be made all necessary repairs, renewals, replacements, betterments and improvements thereof, all as in their reasonable judgment may be necessary, so that the business carried on in connection therewith may be properly conducted at all times; *provided, however,* that nothing in this Section 4.17 shall prevent any of the Issuers, any Guarantor or any Subsidiary from discontinuing any operation or maintenance of any of such properties, or disposing of any of them, if such discontinuance or disposal is (a) in the reasonable good faith judgment of the Board of Directors of the applicable Issuer, desirable in the conduct of the business of such entity and (b) not otherwise prohibited by this Indenture or the Collateral Agreements.

**Section 4.18**     **Corporate Existence**

Subject to Article V hereof, each Issuer shall do or cause to be done all things necessary to preserve and keep in full force and effect (i) its corporate existence and the corporate, partnership or other existence of each of the Subsidiaries, in

82

accordance with the respective organizational documents (as the same may be amended from time to time) of such Issuer or such Subsidiary and (ii) the rights (charter and statutory), licenses and franchises of such Issuer and each of the Subsidiaries; *provided, however*, that such Issuer shall not be required to preserve any such right, license or franchise, or the corporate, partnership or other existence of any of the Subsidiaries, if such Issuer's Board of Directors shall determine in reasonable good faith that the preservation thereof is no longer desirable in the conduct of the business of the Issuers and the Subsidiaries, taken as a whole, and that the loss thereof would not have a material adverse effect on the ability of the Issuers and the Guarantors to satisfy their obligations under the Notes, the Guarantees and this Indenture.

**Section 4.19**      **Limitation on Lines of Business**

The Issuers shall not and the Guarantors shall not, and neither the Issuers nor the Guarantors shall permit any of the Subsidiaries to, directly or indirectly engage to any substantial extent in any line or lines of business activity other than that which, in the reasonable good faith judgment of the applicable Issuer's Board of Directors, is a Related Business. This Section 4.19 shall not apply to a Permitted Entity to which the Parcel 2 Contribution is made so long as such entity continues to satisfy the definition of "Permitted Entity."

**Section 4.20**      **Rule 144A Information**

At any time the Issuers are not required to file the reports required by Section 4.3 hereof, the Issuers shall, and the Guarantors shall, furnish to the Holders or beneficial holders of Notes, upon their request, and to prospective purchasers thereof designated by such Holders or beneficial holders of Notes, the information required to be delivered pursuant to Rule 144A(d)(4) under the Securities Act.

**Section 4.21**      **Additional Collateral**

The Issuers shall, and shall cause each of the Subsidiaries (other than Excluded Foreign Subsidiaries) to, grant to the Trustee a first priority security interest in all Collateral, whether owned on the Issue Date or thereafter acquired, and execute and deliver all documents and to take all action reasonably necessary to perfect and protect such a security interest in favor of the Trustee, in each case, subject to the terms of the Intercreditor Agreement and Permitted Liens.

**Section 4.22**      **Liquidated Damages Notice**

In the event that the Issuers are required to pay Liquidated Damages to Holders of Notes pursuant to the Registration Rights Agreement, the Issuers shall provide written notice ("*Liquidated Damages Notice*") to the Trustee of the Issuers' obligation to pay Liquidated Damages no later than 15 days prior to the proposed payment date for the Liquidated Damages, and the Liquidated Damages Notice shall set forth the amount of Liquidated Damages to be paid by the Issuers on such payment date. The Trustee shall not at any time be under any duty or responsibility to any Holder of Notes to determine the Liquidated Damages, or with respect to the nature, extent, or calculation of the

83

amount of Liquidated Damages owed, or with respect to the method employed in such calculation of the Liquidated Damages.

**Section 4.23    Compliance with Lease-Related Agreements**

The Company (a) shall maintain the Lease-Related Agreements and License Agreement in full force and effect and enforce, in good faith, its rights and remedies under the Lease-Related Agreements and License Agreements, (b) shall comply in all material respects with all terms thereof, in each case, subject only, in the case of the Leases, to the termination of the Leases in accordance with their terms following the occurrence of the Operator Licensing Event, and (c) shall not amend, change, modify or repeal in a manner adverse, individually or in the aggregate (together with any other amendments, supplements or modifications to any of the Lease-Related Agreements or License Agreements), to Noteholders, or transfer or assign, any of the Lease-Related Agreements or License Agreements as in effect on the Issue Date, without giving effect to any amendment or supplement thereto or modification thereof.

**Section 4.24    Limitation on Use of Proceeds**

The Company shall, on the Issue Date, deposit approximately $50.8 million into the Renovation Disbursement Account and approximately $11.2 million into the Interest Reserve Account. Funds in the Interest Reserve Account shall be used only to pay the first two interest payments on the Notes. The funds in the Renovation Disbursement Account and the Interest Reserve Account may be invested only in Cash Equivalents. All funds in the Renovation Disbursement Account and the Interest Reserve Account shall be disbursed only in accordance with the Cash Collateral and Disbursement Agreement.

**Section 4.25    Gaming Licenses and Other Permits**

The Issuers and the Guarantors shall, and shall cause the Restricted Subsidiaries to, use our and their commercially reasonable best efforts to obtain (and, after the occurrence of the Operator Licensing Event, to maintain in full force and effect at all times) all Gaming Licenses, and all other authorizations, rights, franchises, privileges, consents, approvals, orders, licenses, permits or registrations from or with any Gaming Authority or other governmental authority that are necessary for the design, development, construction, equipping and operation of the Casino/Hotel Property or any of the Issuers' and the Restricted Subsidiaries' other operations; *provided*, that if in the course of the exercise of its governmental or regulatory functions the applicable Gaming Authority is required to suspend or revoke any Gaming License or other permit or close or suspend any operation of any part of the Casino/Hotel Property or any of the Issuers' and the Restricted Subsidiaries' other operations as a result of any noncompliance therewith or with law, the Company shall use its commercially reasonable efforts to promptly and diligently correct such noncompliance or replace any personnel causing such noncompliance so that the Casino/Hotel Property or such other operations, as the case may be, shall be opened and fully operating as promptly as practicable.

84

**Section 4.26**      **Restrictions on Activities of Finance Corp.**

Finance Corp. shall not hold any material assets, become liable for any obligations or engage in any business activities; *provided*, that Finance Corp. must be a co-obligor of the Notes (including any Additional Notes incurred pursuant to Section 4.7 hereof) pursuant to the terms of the Indenture and as contemplated by the Purchase Agreement, and, as necessary, may engage in any activities directly related or necessary in connection therewith.

## ARTICLE V
## MERGER AND SUCCESSORS

**Section 5.1**      **Limitation on Merger, Sale or Consolidation**

The Issuers shall not consolidate with or merge with or into another Person or, directly or indirectly, sell, lease, convey or transfer all or substantially all of the Issuers' assets (such amounts to be computed on a consolidated basis), whether in a single transaction or a series of related transactions, to another Person or group of affiliated Persons, unless:

(1)
     either (a) one or more of the Issuers is the surviving Person or Persons or (b) each resulting, surviving or transferee Person is a corporation organized under the laws of the United States, any state thereof or the District of Columbia and expressly assumes by supplemental indenture all of the Issuers' Obligations in connection with the Notes, this Indenture, the Registration Rights Agreement, the Intercreditor Agreement and the Collateral Agreements;

(2)
     no Default or Event of Default shall exist or shall occur immediately after giving effect to such transaction on a *pro forma* basis;

(3)
     unless such transaction is solely the merger of the Issuers and one of the Issuers' previously existing Wholly Owned Subsidiaries which is also a Guarantor for the purpose of reincorporation into another jurisdiction, and which transaction is not for the purpose of evading this provision and not in connection with any other transaction, immediately after giving effect to such transaction on a *pro forma* basis, the Consolidated Net Worth of the resulting, surviving or transferee Person(s) is at least equal to the Issuers' Consolidated Net Worth immediately prior to such transaction;

(4)
     unless such transaction is solely the merger of the Issuers and one of the Issuers' previously existing Wholly Owned Subsidiaries which is also a Guarantor for the purpose of reincorporation into another jurisdiction, and which transaction is not for the purpose of evading this provision and not in connection with any other transaction, immediately after giving effect to such transaction on a *pro forma* basis, the resulting, surviving or transferee

85

Person would immediately thereafter be permitted to incur at least $1.00 of additional Indebtedness pursuant to the Debt Incurrence Ratio Test;

(5)

such transaction would not result in the loss or suspension or material impairment of any Gaming License unless a comparable replacement Gaming License is effective prior to or simultaneously with such loss, suspension or material impairment; and

(6)

each Guarantor shall have, if required by the terms of this Indenture or the Collateral Agreements, confirmed in writing that its Guarantee shall apply to the Issuers' Obligations or the Obligations of each resulting, surviving or transferee Person in accordance with the Notes, this Indenture, the Registration Rights Agreement and the Collateral Agreements.

## Section 5.2    <u>Successor Corporation Substituted</u>

In the event of any transaction (other than a lease or transfer of less than all of the Issuers' assets) in accordance with the foregoing in which the Issuers are not the surviving Person, the resulting, surviving or transferee Person shall succeed to and be substituted for, and may exercise every right and power of, the applicable Issuer(s) under this Indenture with the same effect as if such resulting, surviving or transferee Person had been named therein as an "Issuer," and the Trustee may require any such Person to ensure, by executing and delivering appropriate instruments and Opinions of Counsel, that the Trustee continues to hold a Lien, having the same relative priority as was the case immediately prior to such transactions, on all Collateral for the benefit of the Holders.

For purposes of the foregoing, the transfer (by lease, assignment, sale or otherwise) of all or substantially all of the properties and assets of one or more of the Subsidiaries, the Issuers' interest in which constitutes all or substantially all of the Issuers' properties and assets, shall be deemed to be the transfer of all or substantially all of the Issuers' properties and assets.

### ARTICLE VI
### DEFAULTS AND REMEDIES

## Section 6.1    <u>Events of Default</u>

"*Event of Default,*" wherever used herein, means any of the following events:

(1)

the Issuers failure to pay any installment of Interest (or Liquidated Damages, if any) on the Notes as and when the same becomes due and payable and the continuance of any such failure for 30 days;

(2)

the Issuers' failure to pay all or any part of the principal of or premium, if any, on the Notes when and as the same becomes due and payable at maturity, redemption, by acceleration or otherwise, including, without

86

limitation, payment of the Change of Control Purchase Price or the Asset Sale Offer Price, on Notes validly tendered and not properly withdrawn pursuant to a Change of Control Offer or Asset Sale Offer, as applicable;

(3)

the Issuers' failure or the failure by any of the Guarantors or any of the Subsidiaries to observe or perform any other covenant or agreement contained in the Notes or this Indenture and, except for the provisions under Sections 4.9, 4.13 and 4.14 and Article V hereof, the continuance of such failure for a period of 30 days after the earlier of written notice to the Issuers by the Trustee or written notice to the Issuers and the Trustee by the Holders of at least 25% in aggregate principal amount of the Notes outstanding;

(4)

the cessation of substantially all gaming operations of the Issuers and the Subsidiaries, taken as a whole, for more than 90 days, except as a result of an Event of Loss;

(5)

any revocation, suspension, expiration (without previous or concurrent renewal) or loss of any Gaming License of any of the Issuers or any Subsidiary for more than 90 days;

(6)

a default occurs (after giving effect to any waivers, amendments, applicable grace periods or any extension of any maturity date) in the Issuers' Indebtedness or the Indebtedness of any of the Subsidiaries with an aggregate amount outstanding in excess of $5,000,000 (a) resulting from the failure to pay principal of such Indebtedness at maturity, or (b) if as a result of such default, the maturity of such Indebtedness has been accelerated prior to its stated maturity;

(7)

final, unsatisfied judgments not covered by insurance aggregating in excess of $5,000,000, at any one time rendered against the Issuers or any of the Subsidiaries and not stayed, bonded or discharged within 60 days after their entry;

(8)

any Guarantee of a Guarantor ceases to be in full force and effect or becomes unenforceable or invalid or is declared null and void (other than in accordance with the terms of the Guarantee and this Indenture) or any Guarantor denies or disaffirms its Obligations under its Guarantee or the Collateral Agreements;

(9)

any failure to comply with any material agreement or material covenant in, or any breach of a material representation under, the Collateral Agreements and such failure or breach shall continue for a period of 30 days;

(10)

any of the Collateral Agreements at any time for any reason ceases to be in full force and effect, or is declared null and void, or shall cease to be effective in all material respects to give the Trustee, as collateral agent, the

87

Liens with the priority purported to be created thereby (subject to the Intercreditor Agreement) subject to no other Liens (in each case, other than as expressly permitted by this Indenture and the applicable Collateral Agreement or by reason of the termination of this Indenture or the applicable Collateral Agreement in accordance with its terms);

(11)

a court having jurisdiction in the premises enters a decree or order for (A) relief in respect of any of the Issuers, any of the Guarantors or any of their Significant Subsidiaries in an involuntary case under any applicable Bankruptcy Law now or hereafter in effect, (B) appointment of a receiver, liquidator, assignee, custodian, trustee, sequestrator or similar official of any of the Issuers, any of the Guarantors or any of their Significant Subsidiaries or for all or substantially all of the property and assets of any of the Issuers, any of the Guarantors or any of their Significant Subsidiaries or (C) the winding up or liquidation of the affairs of any of the Issuers, any of the Guarantors or any of their Significant Subsidiaries and, in each case, such decree or order shall remain unstayed and in effect for a period of 60 consecutive days;

(12)

any of the Issuers, any of the Guarantors or any of their Significant Subsidiaries (A) commences a voluntary case under any applicable Bankruptcy Law now or hereafter in effect, or consents to the entry of an order for relief in an involuntary case under any such law, (B) consents to the appointment of or taking possession by a receiver, liquidator, assignee, custodian, trustee, sequestrator or similar official of any of the Issuers, any of the Guarantors or any of their Significant Subsidiaries or for all or substantially all of the property and assets of any of the Issuers, any of the Guarantors or any of their Significant Subsidiaries or (C) effects any general assignment for the benefit of creditors;

(13)

the occurrence of a Tenant Event of Default (as defined in the Leases) or a Landlord Event of Default (as defined in the Leases), or the termination of either of the Leases (other than in accordance with their terms following the occurrence of the Operator Licensing Event); or

(14)

except in connection with a merger, consolidation or sale, lease, conveyance or transfer of all or substantially all of the Issuers' assets in accordance with Article V, the abandonment by the Issuers of the Hooters Renovation or the cessation by the Issuers (or, prior to the occurrence of the Operator Licensing Event, E&W) to operate the Property (other than Parcel 2 as a result of the Parcel 2 Contribution) or the Casino/Hotel Property or the sale or disposition by the Issuers of all or substantially all of their interest in the Property (other than Parcel 2 as a result of the Parcel 2 Contribution) or the Casino/Hotel Property.

88

If a Default occurs and is continuing, the Trustee shall, within 90 days after the occurrence of such Default, give to the Holders notice of such Default.

If an Event of Default occurs and is continuing (other than an Event of Default specified in clause (11) or (12) above relating to any of the Issuers, any of the Guarantors or any of their Significant Subsidiaries) then in every such case, unless the principal of all of the Notes shall have already become due and payable, either the Trustee or the Holders of at least 25% in aggregate principal amount of the Notes then outstanding, by notice in writing to the Issuers (and to the Trustee if given by Holders) (an "*Acceleration Notice*"), may declare all principal thereof and all premium, if any, and accrued and unpaid Interest (and Liquidated Damages, if any) to be due and payable immediately. If an Event of Default specified in clause (11) or (12) above, relating to the Issuers, any of the Guarantors or any of their Significant Subsidiaries occurs, all principal thereof and all premium, if any, and accrued and unpaid Interest (and Liquidated Damages, if any) will be immediately due and payable on all outstanding Notes without any declaration or other act on the part of the Trustee or the Holders. The Holders of a majority in aggregate principal amount of Notes generally are authorized to rescind such acceleration if all existing Events of Default (other than (i) the non-payment of the principal of and premium, if any, and Interest (and Liquidated Damages, if any) on the Notes which have become due solely by such acceleration) and (ii) a Default with respect to any provision requiring a supermajority approval to amend, which Default may only be waived by such supermajority) have been cured or waived.

**Section 6.2**        **Acceleration**

(a)        Subject to the terms of the Intercreditor Agreement, if an Event of Default (other than an Event of Default specified in clause (11) or (12) of Section 6.1 hereof that occurs with respect to any of the Issuers, any of the Guarantors or any of the Issuers' Significant Subsidiaries) occurs and is continuing under this Indenture, then in every such case, unless the principal of all of the Notes shall have already become due and payable, either the Trustee or the Holders of at least 25% in aggregate principal amount of the Notes, then outstanding, by written notice to the Issuers (and to the Trustee if such notice is given by the Holders), may, and the Trustee at the request of such Holders shall, declare the principal of, premium, if any, and accrued and unpaid Interest (and Liquidated Damages, if any) on the Notes to be due and payable immediately.  Upon a declaration of acceleration, such principal of, premium, if any, and accrued and unpaid Interest (and Liquidated Damages, if any) shall be immediately due and payable.  If an Event of Default specified in clause (11) or (12) of Section 6.1 hereof, relating to any of the Issuers, any of the Guarantors or any of the Issuers' Significant Subsidiaries occurs, all principal and accrued and unpaid Interest (and Liquidated Damages, if any) will be immediately due and payable on all outstanding Notes without any declaration or other act on the part of the Trustee or the Holders.

(b)        At any time after such a declaration of acceleration being made and before a judgment or decree for payment of the money due has been obtained by the Trustee as hereinafter provided in this Article VI, the Holders of not less than a majority in aggregate principal amount of then outstanding Notes, by written notice to the Issuers

89