LOEB & LOEB LLP
ANDREW S. CLARE (SBN 050289)
aclare@loeb.com
*Will comply with LR IA 10-2 Within 14 Days*
LANCE N. JURICH (SBN 132695)
ljurich@loeb.com
*Will comply with LR IA 10-2 Within 14 Days*
10100 Santa Monica Blvd., Suite 2200
Los Angeles, CA  90067
Telephone: 310.282.2000
Facsimile: 310.282.2200

SHEA & CARLYON, LTD.
JAMES SHEA (Nevada Bar No. 000405)
jshea@sheacarlyon.com
CANDACE CARLYON (Nevada Bar No. 002666)
ccarlyon@sheacarlyon.com
701 Bridger, Suite 850
Las Vegas, NV  89101
Telephone:  702-471-7432
Facsimile:  702-471-7435

*Co-Counsel for Canpartners Realty Holding
Company IV LLC in all of its capacities*

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEVADA

| | |
|---|---|
| In re: <br><br> 155 EAST TROPICANA, LLC, a Nevada limited liability company, <br><br> Debtor. <br><br> In re <br><br> 155 EAST TROPICANA FINANCE CORP., a Nevada corporation, <br><br> Debtor | Case No.: 11-22216-BAM <br> Case No.:  11-22217-BAM <br><br> Chapter 11 <br><br> JOINTLY ADMINISTERED <br><br> [Motion Pending] <br><br> Date:     August 4, 2011 <br> Time:    1:30 p.m. <br><br> [Set pursuant to Order Shortening Time] |

**LIMITED OPPOSITION OF CANPARTNERS REALTY HOLDING COMPANY IV LLC IN ALL OF ITS CAPACITIES ("CANPARTNERS") TO DEBTORS' EMERGENCY MOTION FOR ENTRY OF AN INTERIM ORDER PURSUANT TO FED. R. BANKR. P. 4001(b) AND LR 4001(b): (1) INITIALLY DETERMINING EXTENT OF CASH COLLATERAL AND AUTHORIZING INTERIM USE OF CASH COLLATERAL BY DEBTORS; AND (2) SCHEDULING A FINAL HEARING TO DETERMINE EXTENT OF CASH COLLATERAL AND AUTHORIZING USE OF CASH COLLATERAL BY DEBTORS**

Canpartners Realty Holding Company IV LLC in all of its capacities ("Canpartners") hereby submits this limited objection (this "Objection") to the Emergency Motion for Entry of an Interim Order Pursuant to Fed. R. Bankr. P. 4001(b) and LR 4001(b): (1) Initially Determining Extent of Cash Collateral and Authorizing Interim Use of Cash Collateral by Debtors; and (2) Scheduling a Final Hearing to Determine Extent of Cash Collateral and Authorizing Use of Cash Collateral by Debtors (the "Motion")[1] filed by the above-captioned debtors and debtors in possession ("Debtors"). In support of this Objection, Canpartners respectfully represents as follows:

## BACKGROUND

Canpartners is the Agent and sole lender under the First Lien Credit Facility (the "Credit Facility"), and also is the holder of approximately 98% of the Second Lien Senior Secured Notes ("Senior Secured Notes"). Canpartners makes this objection in each of the foregoing capacities.

As of the Petition Date, Debtors' obligations (i) under the Credit Facility were approximately $14.5 million, plus interest, costs, fees and expenses, and (ii) under the Senior Secured Notes totaled approximately $165 million (inclusive of interest as of the Petition Date), plus costs, fees and expenses (collectively, the "Obligations"). Debtors have been paying default interest on the Credit Facility since approximately April of 2009. Pursuant to the Credit Facility Loan Documents and the Senior Secured Loan Documents (collectively, the "Loan Documents"), the Obligations are secured by first and second priority security interests in, and liens on, (the "Prepetition Liens") substantially all of Debtors' assets, with the exception of certain cage reserves (the "Collateral"). The Collateral includes substantially all of Debtors' cash, including the Cash Collateral and the Disputed Cash Collateral (other than certain cage reserves).

For over two years, Debtors have engaged in a practice by which they diverted certain of the cash pledged under the Loan Documents away from the accounts (subject to

---

[1] Capitalized terms used herein but not defined herein shall have the meanings ascribed to such terms in the Motion.

the Control Agreements and the control of the Agent and the Trustee) to non-controlled accounts. This course of conduct by Debtors violated the Loan Documents. Indeed, Debtors assert in the Motion that Canpartners did not have liens on the diverted funds. See Motion at ¶ 42 ("Debtors have not provided control agreements for one or more deposit accounts that they established . . . caus[ing] a second event of default to occur under the Credit Facility Agreement.").

Debtors now assert that the Agent, the Trustee and Canpartners do not have liens on some of the nearly $9 million in cash Debtors disclose they hold as of the Petition Date (this is the so-called "Disputed Cash Collateral"). Canpartners does not know where the Disputed Cash Collateral is located (which bank accounts) and Debtors have been less than transparent with regard to this money. While lack of transparency is always troubling to a secured lender, it is all the more so here, where Debtors have failed to honor the terms of Loan Documents.

Against this backdrop, pre-petition, Canpartners actively, and in good faith, negotiated for at least the past nine months with Debtors regarding the terms of a pre-arranged plan of reorganization, which, if implemented, would have had the effect of restructuring the Obligations and facilitating Debtors' swift exit from bankruptcy. Unfortunately, Debtors terminated those negotiations several days ago and filed these cases.

## LIMITED OBJECTIONS

Canpartners does not object to Debtors' use of its cash collateral in principle. Indeed, Canpartners supports, and offered to Debtors on an interim basis only – assuming appropriate restrictions, audit rights, and transparent reporting being made – the use of its cash collateral to pay employees, to make insurance premiums, to cover gambling and hotel room obligations and to satisfy other necessary operating expenses.

Canpartners sought, before and after the Petition Date, to negotiate with Debtors regarding certain deficiencies, but Debtors instead invited Canpartners to file this Objection. At the time of this filing, Canpartners continues to negotiate with Debtors to

obtain the reasonable protections set forth in this limited opposition. Canpartners files this limited objection in the hopes that the Court will remedy these defects (or Debtors will agree) before the interim hearing on Debtors' request authorizing the use of Cash Collateral and Disputed Cash Collateral. To the extent these deficiencies are not remedied, the Motion should be denied. Canpartners reserves all of its rights to seek additional adequate protection at the <u>final</u> hearing, including seeking adequate protection payments on the Senior Secured Notes.

### A. **The Motion does not provide Canpartners with adequate protection of its interest in its cash collateral.**

The Bankruptcy Code assigns to Debtors the burden of proving that Canpartners' interests in its cash collateral have been adequately protected. 11 U.S.C. § 363(p); *In re Scottsdale Medical Pavilion*, 159 B.R. 295, 302 (9th Cir. B.A.P. 1993) ("[T]he debtor bore the burden of proof on the issue of adequate protection."). Here, the protections afforded to Canpartners in the proposed order annexed to the Motion (the "Proposed Order") do not adequately protect Canpartners' interests. Accordingly, Debtors have failed to meet their burden of proof, and the Motion should be denied unless the following additional protections are granted to Canpartners.

#### 1. **Debtors agreed in their Motion to provide Canpartners with replacement liens and superiority claims, but the Interim Order has no such language.**

Debtors must provide Canpartners with replacement liens under Section 361(2) of the Bankruptcy Code and superpriority claims under Sections 105(a) and 507(b) of the Bankruptcy Code, in each case to the extent of any diminution in the value of Canpartners' collateral. Such protections are routinely provided to similarly situated secured creditors and are appropriate here. Indeed, the Motion contemplates the provision of a replacement lien to Canpartners, but such replacement lien is not provided for in the Proposed Order. Canpartners respectfully requests that it be granted replacement liens and superiority claims as Debtors promise in their motion.

**2.     It is premature to award Debtor's professionals a $1 million carve out for professional fees on an interim basis.**

Debtors seek a $1 million carve out from Canpartners' cash collateral to pay their professionals. There is no reason to award Debtors' professionals a $1 million carve out for professional fees, and certainly not on an emergency basis at an interim hearing. Again, this issue should be reserved for the final hearing. If a carve-out is given at all, it should be out of the Disputed Cash Collateral.

**3.     The executives' and board members' salaries should be paid out of Disputed Cash Collateral.**

In their Budget, Debtors seek to pay salaries and other compensation to Debtors' senior executives and the members of Debtors' board of directors on an interim basis. If the Court is inclined to approve these senior management salaries on an interim basis (prior to the insider compensation motions being filed), Debtors should pay those salaries out of Disputed Cash Collateral in order to prevent the diminution of the Cash Collateral in which Debtors acknowledge that Canpartners has an interest. As set forth in Canpartners' reservation of rights to Debtors' Payment of Wages and Salaries Motion, Debtors' management costs dramatically increased during the timeframe when the Hotel and Casino's cash flow performance substantially decreased. Indeed, on the eve of the bankruptcy, Ms. Pierce's salary was increased by 61% and there is also a questionable salary being paid to a part-time executive. Canpartners reserves its right to contest these salaries, and other salaries, in the future, and if authorized on an interim basis, these salaries should be paid out of Disputed Cash Collateral.

**4.     Debtors should continue to pay default interest on the over-secured senior Credit Facility (as Debtor paid pre-petition).**

Debtors propose to pay to Canpartners, in its capacity as Agent under the Credit Facility, <u>contract</u> interest due under the Credit Facility. However, since Debtors' default under the Credit Facility, Debtors have paid monthly interest at the <u>default</u> rate. Under *Timbers*, the Credit Facility is oversecured – even under Debtors' low-ball valuation – and

therefore Canpartners is entitled to interest at the default rate as adequate protection on this Senior Credit Facility. Paying default interest also protects the <u>junior</u> interest holder. Based on their projections, Debtors have enough in the Budget to pay these amounts and, indeed, have been paying at the default rate since the default occurred in approximately April of 2009. The status quo should not change.

**5. The Court should require identical reports to Canpartners as Debtors were providing pre-petition.**

Debtors provided monthly projection reports and subsequent variance reports to Canpartners. Debtors should be required to produce the identical reports that they had been providing to Canpartners pre-bankruptcy, as well as additional reports as described below. Specifically, Canpartners asserts that the interim order should provide for at least the following additional protections:

- Debtors have agreed to provide Canpartners with weekly variance summaries on a cash basis.
- Debtors have also agreed to provide Canpartners preliminary daily operating reports showing preliminary daily results (on an accrual basis).
- The Budget should be refined and resubmitted by Debtors to breakout the detail of the "Other Operating" expenses by department.
- The Debtors should continue to provide Canpartners with the monthly reports that they had been providing to Canpartners on a monthly basis prebankruptcy, including: Summary Balance Sheet, Detailed Balance Sheet, Summary Income Statement, Detailed Income Statement, Trailing 12-Month Detailed Income Statement and Trailing 12-Month Key Operating Statistics.

**6. The Court should require Debtors to allow FTI to conduct an audit of Debtors' books and an audit of its operations pending the final hearing.**

As additional adequate protection to Canpartners, Canpartners' third party professionals (FTI) must be granted access to Debtors' books, records, personnel and facilities for purposes of conducting an audit of Debtors' books and records and an audit of

Debtors' operations. Debtors have preliminarily acknowledged that they will permit such audits. These audits will involve two to three FTI professionals from FTI's hospitality and gaming division, and it is anticipated that the work will take three to five days. FTI has agreed to work cooperatively with Debtors' staff in order to minimize any disruption to Debtors' operations. Canpartners and its professionals must have sufficient access to enable FTI to complete this audit promptly and accurately.

The interim order should authorize these FTI audits – prior to the final hearing – as additional adequate protection to Canpartners.

**B.     The Motion improperly seeks to determine the validity and extent of Canpartners' liens outside of the context of an adversary proceeding and in a manner that is unduly prejudicial to Canpartners and its due process rights.**

Debtors have informed Canpartners' counsel, and have agreed, that Debtors are not seeking an adjudication of Canpartners' lien rights at the interim hearing. Notwithstanding Debtors' commitment on this issue, Debtor's motion appears to seek a determination of the validity and extent of Canpartners' Prepetition Liens on the Cash Collateral and Disputed Cash Collateral, apparently including a determination on an unexplained "initial" basis at the interim hearing, just a few days into these cases. See, e.g., Motion at p. 39, line 14-15. In support of this requested relief, Debtors argue that Canpartners does not have a perfected security interest in or lien on the Disputed Cash Collateral. This requested relief by Debtors is defective procedurally and lacking in merit (and will be addressed at the final hearing or in a proper adversary proceeding context).

First, it is black letter law that Debtors cannot contest the validity and extent of Canpartners' lien rights outside of the context of an adversary proceeding. Fed. R. Bankr. P. 7001(2) ("The following are adversary proceedings: . . . (2) a proceeding to determine the validity, priority or extent of a lien or other interest in property. . . ."); *Johnson v. TRE Holdings, LLC (In re Johnson)*, 346 B.R. 190, 195 (9th Cir. B.A.P. 2006) ("Under the Federal Rules of Bankruptcy Procedure, the determination of interests in property requires an adversary proceeding. . . . Thus, in a . . . motion that is a Rule 9014 contested matter,

not a Rule 7001 adversary proceeding, the bankruptcy court is not authorized by the rules of procedure to enter an 'in rem' order that determines interests in property."). Indeed, determination of such rights outside the context of an adversary proceeding would deprive Canpartners of critical procedural safeguards and violate Canpartners' due process rights. *GMAC Mortgage Corp. Salisbury (In re Loloee)*, 241 B.R. 655, (9th Cir. B.A.P. 1999) (sale void to the extent it purported to determine the priority of creditor's lien because that determination violated Rule 7001(2) and the creditor's due process rights; "The procedural requirement in Rule 7001(2) that lien priorities be resolved by adversary proceeding has implications for due process that become important when a Rule 9014 contested matter is asked to do an adversary proceeding's job."). For those reasons, the Court should decline to make any determination of Canpartners' interests in the Cash Collateral or the Disputed Cash Collateral in connection with the interim Motion. These issues can be resolved at a later time in the case (in accordance with the Bankruptcy Code with appropriate due process given to all parties).

Moreover, Debtors' attempts to invalidate the Prepetition Liens as against the Cash Collateral and Disputed Cash Collateral are without merit, and Canpartners intends to vigorously defend its rights in this regard at the appropriate time and in the appropriate procedural context. Indeed, as noted above, the Prepetition Liens encumber substantially all of Debtors' assets, including the Cash Collateral and the Disputed Cash Collateral (with the exception of certain cage reserves). The security interests in and liens on those funds were and remain properly perfected. To the extent that Debtors claim there is some lack of perfection of the Prepetition Liens on the Cash Collateral or on the Disputed Cash Collateral (which Canpartners disputes), Canpartners will demonstrate that any such infirmity was caused solely by Debtors' diversion of such funds to accounts beyond Canpartners' control, in clear violation of the Loan Documents and applicable law. Stripping the lien rights of Canpartners to Debtors' benefit as a result of Debtors' grievous misconduct (as urged by Debtors) would provide a windfall to Debtors, at the expense of Canpartners, and would be the height of inequity. Canpartners reserves all of its rights

with respect to the validity and extent of the Prepetition Liens in respect of the Cash Collateral and the Disputed Cash Collateral.

## CONCLUSION

WHEREFORE, Canpartners requests that the Court enter an order denying the Motion or granting the Motion in a manner consistent with this Objection, and granting such other and further relief as the Court deems to be just and proper. Canpartner reserves its right at the final hearing to seek additional adequate protection, including, but not limited to, cash payments on the Senior Secured Notes and reserves its rights on Debtors' reserves, Budget and Budget variances until after the audit is completed.

Dated:  August 3, 2011               LOEB & LOEB LLP


By: */s/ James Patrick Shea*
Andrew S. Clare (California Bar No. 050289)
Lance N. Jurich (California Bar No. 132695)
10100 Santa Monica Boulevard, Suite 2200
Los Angeles, California  90067
Tel:  310-282-2000
Fax:  310-282-2200


SHEA & CARLYON, LTD.

James Patrick Shea (Nevada Bar No. 000405)
Candace Carlyon (Nevada Bar No.002666)
701 Bridger, Suite 850
Las Vegas, NV 89101
Tel:  702-471-7432
Fax:  702-471-7435

*Co-Counsel for Canpartners Realty Holding Company IV LLC in all of its capacities*