LOEB & LOEB LLP
ANDREW S. CLARE (SBN 050289)
LANCE N. JURICH (SBN 132695)
10100 Santa Monica Blvd., Suite 2200
Los Angeles, CA 90067
Telephone: 310.282.2000
Facsimile: 310.282.2200

SHEA & CARLYON, LTD.
JAMES PATRICK SHEA (000405)
Shea & Carlyon, Ltd.
701 Bridger, Suite 850
Las Vegas, Nevada 89101
Telephone: 702-471-7432
Facsimile: 702-471-7435

*Co-Counsel for Canpartners Realty Holding Company IV LLC, in all of its capacities*

UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEVADA

| | |
|---|---|
| In re: | Case No.: 11-22216-BAM<br>Case No.: 11-22217-BAM |
| 155 EAST TROPICANA, LLC, a Nevada limited liability company, | Chapter 11 |
| Debtor. | JOINTLY ADMINISTERED |
| | Assigned to Hon. Bruce A. Markell |
| 155 EAST TROPICANA FINANCE CORP, a Nevada corporation, | Date: October 5, 2011<br>Time: 1:30 p.m.<br>Dept: 3 |
| Debtor. | **CANPARTNERS' REPLY TO DEBTORS' OPPOSITION TO CANPARTNERS' MOTION UNDER SECTIONS 105(a) AND 363(b) OF THE BANKRUPTCY CODE TO AUTHORIZE AND DIRECT DEBTORS TO PAY ALL UNDISPUTED, UNSUBORDINATED CLAIMS OTHER THAN CREDIT FACILITY AND SECURED NOTE CLAIMS AND TO ESTABLISH RESERVE FOR CONTINGENT, UNLIQUIDATED AND DISPUTED CLAIMS** |

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

LA2176877.1
012794-10032

REPLY TO DEBTORS' OPPOSITION TO CANPARTNERS' MOTION TO
PAY ALL UNDISPUTED, UNSUBORDINATED CLAIMS

Canpartners Realty Holding Company IV LLC ("Canpartners"), by and through its undersigned counsel, hereby submits this reply (this "Reply") to Debtors' Opposition to Canpartners' Motion under Sections 105(a) and 363(b) of the Bankruptcy Code to Authorize and Direct Debtors to Pay All Undisputed, Unsubordinated Claims other than Credit Facility and Secured Note Claims in Full and to Establish Reserve for Contingent, Unliquidated and Disputed Claims (the "Objection") and in support of Canpartners' Motion under Sections 105(a) and 363(b) of the Bankruptcy Code to Authorize and Direct Debtors to Pay All Undisputed, Unsubordinated Claims other than Credit Facility and Secured Note Claims and to Establish Reserve for Contingent, Unliquidated and Disputed Claims (the "Motion").[1]  In support of this Reply and the Motion, Canpartners respectfully represents as follows:

**PRELIMINARY STATEMENT**

Debtors' Objection to the Motion raises significant questions about for whose benefit these cases are being run.  The Motion seeks to pay (or provide for the payment of) all of Debtors' non-insider creditors, other than the holders of the Credit Facility and Secured Note claims, in full within the first 60 days of the case.  This result would put more money in the hands of creditors, more quickly, than any plan that Debtors could or would even propose, and would be hugely beneficial for Debtors' creditors, to whom Debtors owe a fiduciary duty.  Moreover, as discussed below, this excellent result would be achieved without prejudice to any party except Canpartners.  Yet, Debtors object to this Motion and ask that it be denied, apparently in hopes of preserving a stake for its equity holders who are at least $105 million – but perhaps nearly $140 million – out of the money.  How could Debtors' Objection possibly be consistent with their fiduciary obligations to maximize distributions to creditors, when no other creditor objected to the Motion, and all affected creditors (other than Canpartners, which obviously supports this relief) are assured of smaller distributions if the Motion is denied?

The answer is that objecting to the Motion is not consistent with the Debtors' fiduciary obligations to creditors.  This is particularly true since the distributions that would be made if

---

[1] Capitalized terms used herein but not defined herein shall have the meanings ascribed to such terms in the Motion.

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

LA2176877.1
012794-10032

2
REPLY TO DEBTORS' OPPOSITION TO CANPARTNERS' MOTION TO
PAY ALL UNDISPUTED, UNSUBORDINATED CLAIMS

1   the Motion could easily be afforded by the Debtors, who currently have millions of dollars of

2   excess cash.  Indeed, the total amount of the claims for which Canpartners sought payment

3   under the Motion was approximately $2 million.  However, certain of those claims (perhaps as

4   much as $795,000 worth, if not more) have already been satisfied by the Debtors in

5   accordance with the First Day Motions (defined below).  So the necessary outlay required by

6   the Motion would be quite low.

7           Debtors' theme in the Objection is that the Motion is a *sub rosa* plan, which would

8   terminate their reorganization prospects, automatically achieve all of Canpartners' long-term

9   goals and somehow prejudice Debtors' creditors.  To the contrary, the Motion does not seek to

10  implement a *sub rosa* plan.  It simply proposes to pay creditors, most of whom provided goods

11  and services to Debtors, 100 cents on the dollar.  Indeed, the Motion seeks just what Debtors

12  themselves successfully sought to do at the outset of these cases – to pay certain creditors

13  outside of a plan from Debtors' ever-growing stockpile of excess cash, which they do not need

14  and were never factored into Debtors' projections.

15          If the Motion were granted, Debtors would still have the opportunity to reorganize.

16  They would just have approximately 1% less debt and a less complicated debt structure,

17  requiring less administrative expenses and entailing less unnecessary complexity.  Granting

18  the Motion would not preclude Debtors from proposing a plan.  They could still attempt to sell

19  their property and business or seek an equity investment.  Similarly, Canpartners would not

20  automatically be given the keys to the property if the Motion were granted.  The case would

21  not automatically terminate.  Rather, Canpartners would be required to make subsequent

22  motions (1) to terminate exclusivity to propose a plan, (2) to obtain relief from the automatic

23  stay, or (3) to obtain dismissal of Debtors' cases before it would be entitled to any recovery

24  from Debtors' estates, or tp foreclose on Debtors' assets.

25          Debtors further argue that Canpartners has ignored the rights of the Minority

26  Noteholders.  Canpartners disagrees.  It is telling that the Indenture Trustee (who represents

27  the rights of all holders of the Secured Notes) does not object to the Motion, and none of the

28  Minority Noteholders (all of whom were made aware of the Motion) has objected to the relief

**Loeb & Loeb**
A Limited Liability Partnership
Including Professional
Corporations

LA2176877.1
012794-10032

3
REPLY TO DEBTORS' OPPOSITION TO CANPARTNERS' MOTION TO
PAY ALL UNDISPUTED, UNSUBORDINATED CLAIMS

1  sought by the Motion.  Moreover (and independently from the Indenture Trustee's
2  determination not to object to the Motion), in response to Debtors' concerns regarding the
3  rights of the Minority Noteholders, Canpartners intends (if the Motion is granted) to establish
4  a $50,000 reserve for payment to the Minority Noteholders.  As discussed below, this reserve
5  will more than offset any harm of this Motion to the Minority Noteholders.[2]

6        Finally, Debtors are incorrect that Canpartners cannot use Sections 363(b) or 105(a) as
7  statutory predicates for the relief requested by the Motion.  Those provisions are the
8  Bankruptcy Code sections that enable debtors to make payments to creditors outside of a plan.
9  Canpartners does not invoke those statutes in order to take any affirmative action on its own or
10 for its own account (as did the creditor seeking to invoke Section 506(c) in the lone case cited
11 by Debtors for the proposition that use of the word "trustee" implies that entities other than the
12 trustee may not invoke a particular statute).  Moreover, Canpartners does not dispute that
13 Section 363(b) is permissive, rather than mandatory.  It would make no sense for the statute to
14 <u>require</u> Debtors in every case to use estate assets out of the ordinary course of business after
15 notice and a hearing.  But it does make sense here, for the reasons discussed below and in the
16 Motion.  Accordingly, Canpartners respectfully requests that the Motion be granted.

17 **REPLY**

18 **I.   THE OBJECTION IS INCONSISTENT WITH DEBTORS' FIDUCIARY
        OBLIGATIONS TO MAXIMIZE RECOVERIES TO CREDITORS**

20     A.   *<u>All creditors, including the Minority Noteholders, would do as well or better
        under the Motion as they could ever hope to do under a plan</u>*.

21       It is fundamental that Debtors have a fiduciary duty to maximize distributions to
22 creditors.  *In re Ridgen*, 795 F.2d 727, 730 (9th Cir. 1986) ("The trustee also has a fiduciary
23 obligation . . . to maximize distribution to creditors.").  The Motion accomplishes that goal by
24 paying in full, or providing for payment in full, within approximately 60 days from the
25 Petition Date, of all of Debtors' unsubordinated debt  (the "<u>Affected Claims</u>"), but not
26 including claims under the Credit Facility and the Secured Notes.  It cannot be disputed that

---

[2] As stated in the Motion, Canpartners believes the cost savings will more than offset any payments made to the unsecured creditors if the Motion is granted.

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

LA2176877.1
012794-10032

4
REPLY TO DEBTORS' OPPOSITION TO CANPARTNERS' MOTION TO
PAY ALL UNDISPUTED, UNSUBORDINATED CLAIMS

Debtors could never satisfy the Affected Claims in full under a plan.  Rather, under a plan, the holders of Affected Claims would receive as little as a few cents on the dollar (the IGT Claims may receive a higher distribution to the extent they are secured by valuable assets).

Debtors attempt to invoke the rights of the Minority Noteholders in opposition to the Motion (despite that no Minority Noteholder has objected to the Motion), arguing that their rights will somehow be prejudiced if the Motion were granted.  Yet that is simply not so.  The total cost of the Motion is at most $2 million (but, as described below, is actually likely much less).  As noted in the Motion, granting of the Motion would result in numerous cost savings.  Moreover, while granting the Motion will not put an end to Debtors' cases, Canpartners is hopeful that it would, at a minimum, streamline the cases and cause them to be resolved and concluded more rapidly.  The value of these cost savings and reduction in delay would largely offset (if not exceed) the "cost" to Debtors of the Motion.  Based on the foregoing cost savings and the prospect for increased efficiency, among other things, the Indenture Trustee has not objected to the Motion.  Additionally, not a single Minority Noteholder objected to this Motion, and at least one Minority Noteholder has expressed in writing to Canpartners' counsel his support for the Motion.  Declaration of Lance N. Jurich dated October 4, 2011 ("Jurich Decl.") at ¶ 3.

Canpartners takes very seriously the rights of the Minority Noteholders.  Accordingly, in order to ensure, with certainty, that the Minority Noteholders will be no worse off if the Motion were granted than if it were not, Canpartners has determined, in the event the Motion is granted, to establish with its own funds a $50,000 reserve in favor of the Minority Noteholders (the "Noteholder Reserve"), which will be distributed pro-rata to the Minority Noteholders upon the earliest to occur of the effective date of any plan, the dismissal of Debtors' cases or the granting of relief from the automatic stay in favor of Canpartners or the Indenture Trustee.  The total distributions to creditors under the Motion would be at most $2 million (but likely substantially less).  The Minority Noteholders hold less than 2% of Debtors' unsubordinated debt and thus would be entitled to at most a $40,000 share of the value that would be distributed to creditors as a result of the Motion.  The Noteholder Reserve

**Loeb & Loeb**
A Limited Liability Partnership
Including Professional
Corporations

LA2176877.1
012794-10032

5
REPLY TO DEBTORS' OPPOSITION TO CANPARTNERS' MOTION TO
PAY ALL UNDISPUTED, UNSUBORDINATED CLAIMS

would more than compensate the Minority Noteholders for any potential diminution in value and ensure that the economic impact on the Minority Noteholders is at the very worst neutral.

> B. *Canpartners is the only creditor (or party for that matter) who potentially could face prejudice if the Motion were granted, and Canpartners strongly supports the Motion.*

As set forth in the Motion, the only party who could face any prejudice if the Motion were granted is Canpartners. As holder of approximately 98% of all of the debt in these cases, Canpartners would stand to receive virtually all of the value that would be distributed to other creditors if the Motion were granted (including the value of Debtors' cash).[3] Canpartners is willing to forego those distributions in the event the Motion is granted. Canpartners believes that the cost savings and efficiencies attendant to the relief requested in the Motion would provide benefits that outweigh the costs of paying the Affected Claims, and the Motion expresses a willingness by Canpartners to put its money where its mouth is. To the extent the Motion fails to achieve the positive results that Canpartners would envision, no other party would be harmed.

Because all creditors would benefit from the Motion (and none have objected), the Debtors should be supporting the Motion, not to objecting to it. Since all creditors would receive <u>smaller</u> distributions on account of their claims if the Motion were denied, it would violate Debtors' fiduciary duties to maximize recoveries to creditors for Debtors to take any steps to object to the Motion. For that reason alone, the Motion should be granted.

---

[3] Debtors appear to dispute that all of the value of the estate must be distributed to Canpartners and other creditors. However, it is black letter law that all of the value of Debtors must be distributed to creditors before equity is entitled to retain any assets of the estate on account of their claims. <u>See</u> 11 U.S.C. §§ 726(a), 1129(a)(7), 1129(b)(2). If the motion were granted, Canpartners would hold more than 98% of the remaining debt. To the extent it has a lien on all of Debtors' cash, it would be entitled to foreclose on that cash if it could obtain stay relief. If stay relief were unavailable, it is well-settled that Canpartners would ultimately still be entitled to the value of that cash and to adequate protection against the diminution of that value. On the other hand, to the extent it has no lien on Debtors' cash, Canpartners would still be entitled to the full value of that cash under the absolute priority rule before any of that value could flow to junior creditors or equity. <u>Id.</u> Debtors note that their Objection resembles a "primer on bankruptcy law," but they curiously neglect this fundamental principle.

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

LA2176877.1
012794-10032

6
REPLY TO DEBTORS' OPPOSITION TO CANPARTNERS' MOTION TO PAY ALL UNDISPUTED, UNSUBORDINATED CLAIMS

II. **THE COST OF THE MOTION IS MODEST, HAS ALREADY BEEN SUBSTANTIALLY REDUCED BY OTHER PAYMENTS OF PREPETITION CLAIMS BY DEBTORS AND CAN BE PAID FROM DEBTORS' EXCESS CASH WITHOUT PREJUDICING DEBTORS' OPERATIONS OR ABILITY TO FUND THEIR REORGANIZATION EFFORTS**

The cost to Debtors of the relief requested by the Motion would be minimal and could easily be satisfied by Debtors from cash on hand. In total, the Motion seeks the satisfaction of approximately $2 million in claims, including through the establishment of the Reserve. This amount is comprised of (1) $973,248.43 in Unsecured Claims, (2) $747,339.46 to satisfy the IGT Claims, and (3) $300,000 to fund the Reserve. As discussed in greater detail below, this amount represents just a small fraction of Debtors' current cash on hand. However, from Debtors' August 2011 operating report it is evident that Debtors have already paid more than $795,000 in prepetition claims through August, some or all of which claims it appears otherwise would have been satisfied under the Motion. These claims were satisfied by payments made pursuant to various "first day" orders sought and obtained by Debtors at the outset of these cases (the "First Day Payments"). See Jurich Decl. at ¶ 5, Ex. B (August 2011 Operating Report for 155 East Tropicana, LLC ("155") at pp. 11-13 [ECF No. 176]).

The First Day Payments were made outside of a plan pursuant to Sections 363(b) and 105(a) of the Bankruptcy Code (the same Bankruptcy Code sections on which the Motion is based). As discussed below, the very fact that the First Day Payments were requested, authorized and paid undermines Debtors' argument that substantial payments to creditors must be made only after satisfying the confirmation requirements of Section 1129 of the Bankruptcy Code. However, putting that aside, the First Day Payments greatly reduced the payments Debtors would need to make if the Motion is granted. Specifically, after application of the First Day Payments, the Unsecured Claims remaining unpaid appear to be just approximately $200,000, and the total amount of the payments requested under the Motion appears to have been reduced to approximately $1.2 million.[4] Because the $795,000 figure

---

[4] Canpartners has sought from Debtors' financial advisor a reconciliation of each of the claims satisfied by these payments, together with precise amounts that remain outstanding to each creditor. To date, Debtors' financial advisors have not provided Canpartners with that requested

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

LA2176877.1
012794-10032

7

REPLY TO DEBTORS' OPPOSITION TO CANPARTNERS' MOTION TO
PAY ALL UNDISPUTED, UNSUBORDINATED CLAIMS

reflected above for the First Day Payments includes only payments made by Debtors through the month of August, it is likely that Debtors have already satisfied even more of the Affected Claims, thereby further reducing the requested payments under the Motion.[5]

Debtors do not dispute that they have ample cash to satisfy, or provide for the satisfaction of, the Affected Claims without prejudicing their ability to operate or to fund their reorganization efforts. See Objection at p. 2 (acknowledging that Debtors "hold cash in excess of its requirements for operation"). Indeed, Debtors currently hold approximately $10.346 million in cash, an increase of approximately $1.38 million since the Petition Date. Jurich Decl. at ¶ 4., Ex. A. This increase alone would more than cover the cost of the Motion after application of the First Day Payments. However, this increase tells only part of the story, since Debtors' positive cash flow has also exceeded its projections by $1,562,780, again more than enough to cover all of the costs of the Motion after application of the First Day Payments. See Cash Collateral Budget, ECF No. 7-1; RJN in support of Motion at Ex. 7. The best use of this cash would be to maximize recoveries to unsecured creditors in furtherance of Debtors' fiduciary obligations to their creditors. By granting the Motion, it would ensure that all of the Affected Claims are satisfied (or that provision is made for their satisfaction).

### III. THE MOTION DOES NOT SEEK TO IMPOSE A SUB ROSA PLAN ON DEBTORS AND THEIR ESTATES

Debtors overstate the significance of the relief sought by Canpartners in the Motion and also overstate the adverse effects the Motion would have on their bankruptcy cases and on Chapter 11 cases. Indeed, Debtors warn that granting the Motion would pose a danger "not only to these Chapter 11 Cases, but also to the Chapter 11 process in general." With respect to Debtors' reorganization prospects, Debtors allege that granting the Motion would "dismantl[e] these Chapter 11 Cases . . . only sixty days after the Petition Date" and that the Motion "is intended to prohibit Debtors from reorganizing." Objection at pp. 10, 11. Debtors further

---

information.

[5] Again, Canpartners has requested information from Debtors' financial advisors regarding any additional First Day Payments made by Debtors since August, but that information has not yet been provided.

8

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

LA2176877.1
012794-10032

REPLY TO DEBTORS' OPPOSITION TO CANPARTNERS' MOTION TO
PAY ALL UNDISPUTED, UNSUBORDINATED CLAIMS

1  warn that granting the Motion would "impair the critical balance of debtor-creditor rights
2  under Chapter 11 by permitting a secured creditor . . . to terminate a case immediately . . . by
3  way of motion without requiring such creditor to seek and prove its right to relief from Section
4  362(a); or without satisfying the requirements of Section 1129 with regard to plan
5  confirmation." Objection at pp. 2-3. Debtors finally argue that the Motion is a *sub rosa* plan
6  designed to eliminate the possibility of reorganization and to dictate plan terms. Objection at
7  p. 12.

8  Despite Debtors' warnings that granting the Motion will end Chapter 11s, the Motion
9  does not seek to, and would not, dismantle these cases, prohibit Debtors from reorganizing,
10  impair the balance of rights between debtors and creditors in Chapter 11 or in any way
11  eliminate the obligation that Canpartners comply with Section 362(d) with respect to stay
12  relief or Section 1129 with regard to the confirmation of a plan. Rather, the Motion seeks
13  merely to authorize and direct Debtors to use a small portion of its admittedly excess cash to
14  pay legitimate creditors (who are owed just approximately 1% of Debtors' total debt) in order
15  to streamline the cases, eliminate substantial administrative expenses and ensure that the
16  Affected Creditors (the majority of which are individuals and small and mid-sized businesses)
17  are not treated as pawns in Debtors' equity holders to retain control, despite being at least
18  $105 million out of the money.

19  The relief sought by Canpartners is functionally no different from (and is, in fact,
20  substantially similar in amount and scope to) the first-day relief sought and obtained by
21  Debtors permitting them to pay more than $1.48 million in prepetition claims, <u>outside of a</u>
22  <u>plan</u>. Specifically, on the first day of Debtors' cases, Debtors made no fewer than six motions
23  seeking to pay prepetition unsecured obligations outside of a plan. Debtors' total authority to
24  pay prepetition claims totaled at least $1.48 million, plus other unliquidated (<u>i.e.</u>, unlimited)
25  amounts. Specifically, the Debtor filed motions (the "<u>First Day Motions</u>") seeking authority
26  to pay (1) approximately $495,000 in prepetition wage obligations [ECF No. 10]; (2) $353,671
27  in prepetition customer deposits, travel agent commissions, show tickets and ticket proceeds
28  [ECF No. 11]; (3) an apparently unlimited amount of prepetition gaming obligations [ECF No.

**Loeb & Loeb**
A Limited Liability Partnership
Including Professional
Corporations

LA2176877.1
012794-10032

9
REPLY TO DEBTORS' OPPOSITION TO CANPARTNERS' MOTION TO
PAY ALL UNDISPUTED, UNSUBORDINATED CLAIMS

12]; (4) approximately $480,000 in prepetition claims of certain vendors [ECF No. 13]; (5) approximately $153,000 to providers of utility services [ECF No. 14]; and (6) an apparently unlimited amount of prepetition tax obligations [ECF No. 15].[6]

The orders granting the First Day Motions (all of which were consented to by Canpartners) provide Debtors the authority to satisfy the bulk of the Affected Claims.[7] [ECF Nos. 54, 60, 61, 62, 63 and 64.] And, as noted above, Debtors have used that authority to satisfy at least $795,000 of those claims. Of course, the Debtors did not complain that <u>their</u> efforts to pay virtually all of their prepetition claims (other than the Credit Facility and Secured Note claims) in full was a *sub rosa* plan that would cripple Debtors' reorganization prospects and pose significant danger to the Chapter 11 process. This contradiction illustrates the hypocrisy of the Objection.

Moreover, Canpartners does not seek to terminate Debtors' reorganization efforts by the Motion, and the Motion could never have that effect. Had Canpartners wanted to put an end to these cases, it could have moved to dismiss the cases, made a motion for relief from the automatic stay to foreclose on its collateral (<u>i.e.</u>, all of Debtors' assets), or moved for the appointment of a Chapter 11 trustee. It did none of those things. Instead, Canpartners seeks only to ensure payment of just approximately 1% of the claims against Debtors, claims held by the holders of the Affected Claims which are essentially the same claims that Debtors have already received authority to pay.

What happens after the claims of the Affected Creditors are paid is not the subject of the instant Motion. Debtors will still have as much as $9 million in cash on hand, an amount far in excess of the amount it needs to operate and fund its reorganization efforts (which Debtors' have advised is between $5-7 million). Debtors will still owe more than $180 million to its largest unsubordinated creditors (which, as Debtors point out, hold both secured and unsecured claims against Debtors). Debtors will still hold title to all of their assets.

---

[6] Canpartners requests that the Court take judicial notice of the First Day Motions.

[7] Canpartners requests that the Court take judicial notice of the orders granting the First Day Motions.

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

LA2176877.1
012794-10032

10
REPLY TO DEBTORS' OPPOSITION TO CANPARTNERS' MOTION TO PAY ALL UNDISPUTED, UNSUBORDINATED CLAIMS

Debtors will remain in possession under Section 1107 of the Bankruptcy Code and will maintain all of the rights and obligations of a debtor in possession. Canpartners will still be barred from foreclosing on Debtors' property by the automatic stay and would still need to meet the evidentiary burdens necessary to convince the Court that relief from stay is appropriate (or that these cases should be dismissed), before it could foreclose on Debtors' assets. Moreover, to the extent Canpartners sought to propose a plan of reorganization or liquidation in these cases, in order to provide for the disposition of Debtors' assets or the resolution of parties' rights, Canpartners would need to meet the requisite burden to terminate exclusivity and meet the standards for confirmation of a plan.

None of Debtors' rights relating to any of the foregoing would be affected by the granting of the Motion. Debtors would be free to propose any plan they want, to file any motion for relief that they want, and to make any arguments they want regarding classification, creditors' rights under Section 1111(b), the parties' good faith and any other issues that they believe to be relevant to their attempted reorganization. In the meantime, a small sliver of Debtors' creditors (representing the majority in number of Debtors' creditors – most of them individuals and small and mid-sized businesses) will have received payment in full, to which they would not otherwise have been entitled, and the cases will have been simplified to the benefit of all.

## IV.    THE OBJECTION CONTAINS NUMEROUS OTHER INVALID ARGUMENTS

### A.    *Sections 363(b) and 105(a) do authorize the relief requested in the Motion.*

Debtors argue that, because Section 363(b) provides that the "trustee may" use estate property out of the ordinary course of business, no other party can "use" that statute, including to request that Debtors pay certain claims outside of the context of a plan. Like the balance of the Objection, this interpretation of those statutes is without merit.

Indeed, Debtors rely heavily on *In re Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 7 (2000) to support its textual argument that use of the term "trustee" in Section 363(b) "supports the conclusion that entities other than the trustee are not entitled to use" Section 363(b). In that case, a debtor's workers compensation insurer commenced an

1  adversary proceeding against a secured creditor seeking to be paid postpetition premiums as a
2  surcharge against the creditor's collateral pursuant to Section 506(b).  Not surprisingly, the
3  Supreme Court determined that Section 506(b) did not provide the insurer with a private right
4  to seek payment of its individual claim from a secured creditor's collateral.  Id. at 6.  However,
5  the circumstances in *Hartford* are nothing like the circumstances here.

6  Here, Canpartners is not seeking to "use" Section 363(b) in order to receive payment
7  on account of its claim or to invoke any private right in its favor.  Instead, Canpartners is
8  merely asking that Debtors "use" Section 363(b) to pay creditors outside of a plan.  It is that
9  section which permits debtors to make payments to creditors outside of a plan.  Indeed,
10 Debtors have acknowledged its reliance on that section as the basis for the First Day Motions.
11 Because Section 363(b) permits this relief, Section 105(a) is not being asked to create any new
12 authority.  Rather, it is being asked to serve its equitable purpose to carry out the provisions of
13 the Bankruptcy Code.

14 Moreover, Debtors' argument that the use of the term "may" prevents any party from
15 seeking to compel Debtors to take a particular action is not persuasive.  First, Canpartners
16 does not dispute that Section 363(b) is generally permissive, rather than mandatory.  Indeed, a
17 "mandatory" formulation of that statute would produce the absurd result of requiring debtors
18 to use estate property out of the ordinary course of business, after notice and hearing, even
19 where no such use was appropriate under the circumstances.  But nowhere in Section 363(b)
20 does it say that a debtor cannot be compelled to exercise that authority under appropriate
21 circumstances in furtherance of Debtors' fiduciary interests to creditors.  Indeed, Section
22 105(a) was designed for this very purpose – to enable parties to achieve equitable, sensible
23 results in furtherance of the purposes of the Bankruptcy Code.  *See U.S. v. Sutton*, 786 F.2d
24 1305, 1307 (5th Cir. 1986) ("Section 105(a) simply authorizes a bankruptcy court to fashion
25 such orders as are necessary to further the purposes of the substantive provisions of the
26 Bankruptcy Code.")

27 Finally, Debtors seek to distinguish the case law cited by Canpartners for the
28 proposition that excess cash can be distributed to creditors outside the context of a plan on the

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

LA2176877.1
012794-10032

12
REPLY TO DEBTORS' OPPOSITION TO CANPARTNERS' MOTION TO
PAY ALL UNDISPUTED, UNSUBORDINATED CLAIMS

grounds that those cases did not involve circumstances that were "in derogation of affected creditors' interests." Objection at p. 11, n 23.  However, this distinction is disingenuous, since the Motion provides for payment <u>in full</u> of the Affected Claims, while ensuring that the rights of the Minority Noteholders are, at worst, preserved and at best enhanced.  Other than Canpartners (who supports the Motion), the transactions proposed by the Motion would not be in derogation of the interests of a single stakeholder of Debtors.  Indeed, even the rights of the holders of Debtors' equity would not be derogated, because they are so far out of the money that they have no legitimate hope of recovery without regard to whether the Motion is granted.

B.  <u>*Debtors' arguments regarding classification and the right of holders of Secured Notes to make the 1111(b) election miss the mark and are, in any event, irrelevant to the Motion*</u>

Debtors raise a number of plan issues which are not relevant to the instant Motion. Debtors state that the Deficiency Claim may be classified separately from the claims of Debtors' trade creditors, and that the deficiency claim of Canpartners may be classified separately from the deficiency claim held by the Minority Noteholders.  While those issues are best left for the plan process, under well-settled precedent from the Ninth Circuit Court of Appeals, those arguments are incorrect.  *See In re Barakat*, 99 F.3d 1520 (9th Cir. 1996) (holding that a plan could not separately classify an unsecured mortgage deficiency claim from a class of general unsecured creditors absent valid business justification).  No such business justification exists here.

Debtors also seek to make much of the potential right of creditors, including the Minority Noteholders, to make the Section 1111(b) election.  However, that election is made on a class-by-class basis (not by individual claimant), and it must be made by at least two thirds in amount and more than one half in number.  11 U.S.C. § 1111(b)(i).  As holder of approximately 98% of the Secured Notes, Canpartners will have the ability to determine for the for the class of holders of Secured Notes whether or not it will make the Section 1111(b) election.  Moreover, to the extent the holders of Secured Notes (based on Canpartners determination) do make the Section 1111(b) election, it would render it very difficult, if not

**Loeb & Loeb**
A Limited Liability Partnership
Including Professional
Corporations

LA2176877.1
012794-10032

13
REPLY TO DEBTORS' OPPOSITION TO CANPARTNERS' MOTION TO
PAY ALL UNDISPUTED, UNSUBORDINATED CLAIMS

1  impossible, for Debtors to confirm a plan that is feasible, as required for confirmation under
2  Section 1129(a)(11).

3  In any event, these arguments are irrelevant for purposes of the Motion. The Motion
4  does not seek to determine these issues.[8] Indeed, these issues remain affirmatively open, and
5  Debtors will be free to make any arguments they like regarding these issues at a future
6  hearing. Instead, just like Debtors did in connection with the First Day Motions, Canpartners
7  is asking only that the Court authorize and direct payment by Debtors of the Affected Claims,
8  in order to benefit these cases and the estate.

9    C.  <u>Canpartners has acted at all times (including prepetition) in good faith</u>.

10  Debtors finally argue that Canpartners' good faith must be considered in determining
11  whether to grant the Motion. Canpartners <u>is</u> acting in good faith, even though Sections 363(b)
12  and 105(a) of the Bankruptcy Code contain no "good faith" requirement, and the good faith of
13  Debtors was certainly not a determining factor in connection with the First Day Motions.

14  With that having been said, Canpartners has at all times, pre- and postpetition operated
15  in good faith in connection with its dealings with Debtors. Indeed, Canpartners has been
16  involved in restructuring negotiations with Debtors for the past several years. Canpartners
17  was on the verge of finalizing a consensual restructuring with Debtors and had even circulated
18  execution copies of the final restructuring documents approximately two weeks before the
19  Petition Date, when Debtors unexpectedly and unilaterally pulled out of negotiations and
20  alerted Canpartners that they intended to file these contested cases.

21  Since the Petition Date, Canpartners has operated in good faith to give Debtors the
22  breathing room necessary to attempt to effectuate their reorganization, including by consenting
23  to substantially all of the First Day Motions. Canpartners did not object to the Gordon Silver
24  or the Alvarez retention applications, but did object to the Innovation Capital retention. By

---

[8] Similarly, Canpartners is not asking the Court to determine that the Subordinated Affiliated Claims are, in fact, subordinated. That determination can be made in the context of a plan or an adversary proceeding after the fact. The need to determine the subordinated status of the Subordinated Affiliate Claims should provide no bar to the approval of the Motion, since, among other things, Debtors have testified under oath that such claims are in fact subordinated and none of the holders of the Subordinated Affiliated Claims objected to the Motion.

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

LA2176877.1
012794-10032

14
REPLY TO DEBTORS' OPPOSITION TO CANPARTNERS' MOTION TO
PAY ALL UNDISPUTED, UNSUBORDINATED CLAIMS

this Motion, Canpartners continues to act in good faith in order to achieve the best possible result for itself and Debtors' other creditors, who would fare substantially better under this Motion than they could possibly fare under any plan Debtors could propose.

## CONCLUSION

WHEREFORE, Canpartners respectfully requests that the Court overrule the Objection and grant the Motion and such other relief as the Court determines to be just and proper.

Dated:  October 4, 2011                LOEB & LOEB LLP


By:    /s/ *James Patrick Shea*
Andrew S. Clare (California Bar No. 050289)
Lance N. Jurich (California Bar No. 132695)
10100 Santa Monica Boulevard, Suite 2200
Los Angeles, California 90067
Tel:  310-282-2000; Fax:  310-282-2200

SHEA & CARLYON, LTD.
James Patrick Shea (Nevada Bar No. 000405)
Candace Carlyon (Nevada Bar No.002666)
701 Bridger, Suite 850
Las Vegas, NV 89101
Tel:  702-471-7432; Fax:  702-471-7435

*Co-Counsel for Canpartners Realty Holding Company IV LLC in all of its capacities*

**Loeb & Loeb**
A Limited Liability Partnership
Including Professional
Corporations

LA2176877.1
012794-10032

15
REPLY TO DEBTORS' OPPOSITION TO CANPARTNERS' MOTION TO PAY ALL UNDISPUTED, UNSUBORDINATED CLAIMS